NEW ENGLAND TRUST COMPANY *vs.* SAMUEL A. B. ABBOTT, executor.

Suffolk.     March 14, 1894. — October 18, 1894.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Corporation — Validity of Contract — Public Policy — Appraisal of Stock — Specific Performance — Evidence — Remedy.*

The fact that conditions printed upon a certificate for shares of stock in a corporation are contained in by-laws of the corporation which may be invalid as such, does not render void the agreement made in accepting the certificate by the person to whom it is issued, if the contract is in substance one which the corporation has power to make.

A corporation has the power to agree with a purchaser of shares of its stock that, at his death, the shares shall be appraised by the directors of the corporation and transferred to it at the appraised value, if the directors so elect, who, "whenever, in their judgment, it can be done with safety and advantage to the corporation," shall "sell the shares to such persons as shall appear to them, from their situation and character, most likely to promote confidence in the stability" of the corporation; and such an agreement is not contrary to public policy.

Certificates for shares of stock in a corporation recited that they were subject to the conditions expressed in the by-laws of the corporation printed thereon, which provided that the executor or administrator of any deceased stockholder should cause his shares to be appraised by the directors, and should thereupon offer the same to them for the use of the corporation at such appraised value; that if the directors should not, within ten days after the shares were offered to them, take the same and pay the executor or administrator the appraised value, he might sell the shares to any person; and, by an amendment, that it should be the duty of such executor or administrator to offer the shares for appraisal and to be taken by the corporation, if it should so elect, whenever requested by a certain officer within a time limited. A certificate for shares was issued to A., who receipted for the same as follows: "Received the above certificate subject to the conditions and restrictions therein referred to, and to the by-laws of the company, to which I agree to conform." At a meeting of the directors of the corporation it was voted that the stock of A., who had died, be appraised at a certain sum per share and taken for the use of the corporation. *Held*, upon a bill in equity to compel the executor of A.'s will to transfer the shares to the corporation, that the appraisal was valid; and that it was not necessary that the defendant should offer the stock to the corporation for appraisal.

If the by-laws of a corporation, containing conditions subject to which the cer-
tificates for stock are issued, provide that at the death of a stockholder his
shares shall be appraised by the directors of the corporation and transferred to
it at the appraised value, if the directors so elect, who are to dispose of it in a
certain manner, it is no objection to a bill in equity by the corporation against
the executor of the will of a deceased stockholder, whose shares it has so ap-
praised and voted to take for the use of the corporation, for specific performance
of the agreement to convey the shares made in accepting the certificate, that
the stock was undervalued, there being no fraud in the appraisal, and evidence
relating to the value of the stock is rightly excluded; and, no stock in the cor-
poration ever having been sold in the market, but all shares which have been
transferred having been transferred to the corporation and disposed of by the
directors in the manner provided, an action at law for damages will not furnish
an adequate remedy.

MORTON, J.   This is a bill brought by the plaintiff to compel
the transfer to it by the defendant, as executor of the will of
Josiah G. Abbott, of certain shares in the plaintiff corporation
which were held by said Abbott at his decease, and which it
is alleged he agreed, when the certificates were issued to him,
should be appraised at his death by the directors, and trans-
ferred to the plaintiff at the appraisal, if the directors so
elected.   The bill also seeks to enjoin the defendant from
prosecuting an action at law brought by him against the plain-
tiff to recover certain dividends upon said shares that have been
declared by it.

The plaintiff was organized in 1869 under a special charter,
(St. 1869, c. 182,) with a capital of five hundred thousand dol-
lars, which was afterwards increased to a million.   The terms
of the alleged agreement are found in the by-laws, of which all
that is now material is as follows :

" Article 7.   Any member of this corporation who shall be
desirous of selling any of his shares, the executor or adminis-
trator of any member deceased, and the grantee or assignee
of any shares sold on execution, shall cause such, their shares
respectively, to be appraised by the directors, which it shall be
their duty to do on request, and shall thereupon offer the same
to them for the use of the corporation at such appraised value;
and if said directors shall choose to take such shares for the
use of the corporation, such member, executor, administrator,
or assignee shall, upon the payment or tender to him of such
appraised value thereof, and the dividends due ·thereon, transfer
and assign such share or shares to said corporation ; provided,

however, the said directors shall not be obliged to take such shares at the appraised value aforesaid, unless they shall think it for the interests of the company; and if they shall not, within ten days after such shares are offered to them in writing, take the same, and pay such member, executor, administrator, or assignee therefor the price at which the same shall have been appraised, such member, executor, administrator, or assignee shall be at liberty to sell and dispose of the same shares to any person whatever.

" Article 8. The directors shall have power, and it shall be their duty, to sell and dispose of the shares which may be transferred as aforesaid to the corporation, whenever, in their judgment, it can be done with safety and advantage to the corporation; and in all sales made by the directors, under any of the aforesaid provisions, it shall be their duty to sell the shares to such persons as shall appear to them, from their situation and character, most likely to promote confidence in the stability of the institution; no greater number than one hundred shares being assigned to any one person; nor, in the case of a person already a member, a greater number than will be sufficient to increase his previous number to one hundred shares."

These by-laws were adopted before any certificates of stock were issued. Afterwards, but before the capital was increased, Article 7 was duly amended by adding to it the following :

" It shall be the duty of such executor, administrator, grantee, or assignee to offer said shares for appraisal and to be taken by the corporation, if it shall so elect, whenever requested by the actuary or secretary, and no dividends or interest shall be paid or allowed after a failure to comply with such request; provided that such request shall not be made until after the payment of one dividend and the expiration of six months from the death of the owner or sale as aforesaid ; but the offer may be made at any earlier period if the party shall prefer."

Every certificate contained on its face, as part of the certificate, the provision that " said shares are transferable only in person, or by attorney duly constituted, on the books of the company, and in the manner and upon the conditions expressed in the by-laws of the company printed upon the back of this certificate." On the backs of the certificates were printed By-laws 7 and 8.

By-law 7 was printed as amended on the backs of those issued after the increase. There were also on the stubs from which the certificates were detached in the certificate-books two receipts given and signed by the defendant's testator at the time the two certificates were issued to him in the original and increased capital, which were each as follows: " Received the above certificate subject to the conditions and restrictions therein referred to, and to the by-laws of the company, to which I agree to conform."

The defendant contends that these by-laws are void. We have not found it necessary to consider that question, and we express no opinion upon it. We think that the case well may stand on the ground that the defendant's testator entered into an agreement with the plaintiff to do what the plaintiff now seeks to compel his executor to do.

It is manifest that a stockholder may make a contract with a corporation to do or not to do certain things in regard to his stock, or to waive certain rights, or to submit to certain restrictions respecting which the stockholders might have no power of compulsion over him. In *Adley* v. *Whitstable Co.* 17 Ves. 315, 323, Lord Eldon says : " It has been frequently determined, that what may very well be made the subject of contract between the different interests in a partnership would not be good as a by-law ; for instance, an agreement among the citizens of London, who have as extensive a power of making by-laws as any corporation, that they would not sell, except in the markets of London, would be good; yet it has been declared by the legislature, that a by-law to that effect is bad." See also *Davis* v. *Second Universalist Meeting-House*, 8 Met. 321; *Bank of Attica* v. *Manufacturers & Traders' Bank*, 20 N. Y. 501, 505, 506 ; Cook, Stock & Stockholders, § 408.

In the present case the certificates were issued to the defendant's testator in consideration of the payment by him to the corporation of the amount due for the stock, and of the agreements with it on his part which they contained. By accepting them without objection, and by signing the receipts, he agreed to the conditions printed on the backs of the certificates. The fact that the conditions were contained in by-laws which may have been invalid as such, does not render his agreement void, if the

contract was in substance one which the corporation had power to make.

We think that it had such power. It is held in this State that a corporation unless prohibited may purchase its own stock, (*Dupee* v. *Boston Water Power Co.* 114 Mass. 37,) and we see nothing opposed to public policy in such an agreement as this with corporations like this. If honestly carried out by the directors it tends to secure a trustworthy body of stockholders, from which those having the care and management of the affairs of the corporation naturally would be selected. It certainly cannot be contrary to public policy that the managers of this and similar institutions should be persons of skill, who possess the confidence of the public, and the restraint upon alienation is no greater than is often agreed to.

In England it is not unusual to find in the deeds of settlement or articles of association under which corporations or joint stock companies have been organized, and which correspond to the charter and by-laws here, provisions requiring the· stockholder, in case he wishes to transfer his stock, to offer it to the directors, or to submit to them the name of the transferee for approval. *Bargate* v. *Shortridge*, 5 H. L. Cas. 297. *Poole* v. *Middleton*, 29 Beav. 646. *Chappell's case*, L. R. 6 Ch. 902. *Ex parte Penney*, L. R. 8 Ch. 446. *Moffatt* v. *Farquhar*, 7 Ch. D. 591. No objection seems to have been made to these provisions.

In this State the Legislature in numerous instances has provided in the charters of corporations like this, that the shares shall be transferable according to such rules and regulations as the stockholders shall establish, and not otherwise. It is hardly possible that the Legislature was ignorant of the construction which has been put upon the power thus conferred, and which in the case of the first corporation of the kind chartered in this Commonwealth, the Massachusetts Hospital Life Insurance Company, (St. 1818, c. 180,) was shown, it is said, by the adoption of by-laws from which those in this case were copied. It is true that this charter contains no provision in regard to by-laws, or to the transfer of shares. But the policy of the Legislature cannot be affected by such an omission, in view of the fact that many of the charters since granted contain this provision.

Neither do we think that the agreement is void for the reason

that it authorizes the plaintiff to invest, as the defendant contends, in its own stock, or because it compels the defendant to submit to the appraisal of the directors.   If the enumeration in its charter of certain things in which it may invest is to be construed as excluding, among others, its own stock, we think that the object of the agreement is not to secure the transfer of the shares to the plaintiff as an investment, but to enable the directors to dispose of it to "such persons as shall appear to them, from their situation and character, most likely to promote confidence in the stability of the institution."   And though, pending its disposition by the directors, it may for convenience' sake be placed with the company's securities, and dividends, if declared, may be collected upon it, that does not alter the essential character of the company's holding.   It is settled that one may agree to sell his property at a price to be determined by another, and that he will be bound by the price so fixed, even though the party establishing it was interested, provided the interest was known, and no objection was made by the parties, and no fraud or bad faith is shown.   *Brown* v. *Bellows*, 4 Pick. 179, 189.   *Palmer* v. *Clark*, 106 Mass. 373, 389.   *Haley* v. *Bellamy*, 137 Mass. 357, 359.   *Fox* v. *Hazelton*, 10 Pick. 275.   *Strong* v. *Strong*, 9 Cush. 560, 569.   Benjamin on Sales, § 88, note 3.

The defendant objects that there was no real appraisal, and that he did not offer the stock for appraisal.   The records of the plaintiff show that, at a directors' meeting at which were present sixteen directors, it was voted that the defendant's stock be appraised at two hundred and twenty dollars per share, and taken for the use of the corporation.   The directors were not bound to give the defendant notice or a hearing, (*Palmer* v. *Clark, ubi supra*,) and we must assume that they gave the matter such attention as, in their opinion, was necessary, and that the appraisal correctly expresses their judgment after taking into account such matters as they thought should be considered. There is nothing to show that they were so mistaken about the facts, that what they did was in no fair sense an appraisal of this stock, but of something else.   It is said that they omitted the good will.   If so, it was at most an error of judgment, which would not invalidate the appraisal.   It was not a condition precedent to the appraisal that the defendant should offer the stock.

The agreement of the defendant's testator was, in substance, that the stock should be appraised by the directors, and that it might be taken at the appraisal by them if they so elected; and that has been done. The offer was for the purpose of fixing a time from which the ten days should begin to run at whose expiration the stockholder could dispose of his stock if the directors did not elect to take it. If the directors appraised the stock and voted to take it at the appraisal, an offer was unnecessary.

Lastly, the defendant contends that the plaintiff is not entitled to specific performance because the stock was greatly undervalued, and because the plaintiff has a remedy at law. It is evident that to remit the plaintiff to an action at law for damages would defeat the very purpose of the contract, and would not, we think, furnish an adequate remedy. No stock in the plaintiff company has ever been sold in the market, and all the shares that have been transferred have been transferred to the plaintiff and disposed of by the directors in the manner provided. About three fourths of the stock of the original subscribers has been thus transferred. There is no evidence that the testator ever objected to this mode of dealing with it. And we see no good reason why the plaintiff should be obliged to accept damages, for which it might be difficult to lay down a clear rule, instead of performance. *Western Railroad* v. *Babcock*, 6 Met. 346. *Cushman* v. *Thayer Manuf. Jewelry Co.* 76 N. Y. 365. The case would stand differently, perhaps, if the shares were bought and sold in the market, like most stocks. *Adams* v. *Messinger*, 147 Mass. 185. The defendant does not charge the directors with any fraud in the appraisal. He expressly disclaims that. It is well settled that where one agrees that another may fix the price for certain property, or the sum to be paid for material or services, the decision of the party selected cannot be impeached by showing that he has committed an error of judgment, or failed to avail himself of all the information which he might have obtained, or has valued the property too high or too low. *Palmer* v. *Clark, ubi supra. Flint* v. *Gibson*, 106 Mass. 391. *Robbins* v. *Clark*, 129 Mass. 145. *Martinsburg & Potomac Railroad* v. *March*, 114 U. S. 549. *Stevenson* v. *Watson*, 4 C. P. D. 148. *Sharpe* v. *San Paulo Railway*, L. R. 8 Ch. 597. *Richards*

v. *May*, 10 Q. B. D. 400.    *Tullis* v. *Jacson*, [1892] 3 Ch. 441. *Ranger* v. *Great Western Railway*, 5 H. L. Cas. 72.    The evidence that was offered by the defendant relating to the value of the stock was, therefore, rightly excluded.

It is equally well settled that specific performance of an agreement to convey will not be refused merely because the price is inadequate or excessive.    The difference must be so great as to lead to a reasonable conclusion of fraud, mistake, or concealment in the nature of fraud, and to render it plainly inequitable and against conscience that the contract should be enforced.    *Western Railroad* v. *Babcock*, 6 Met. 346, 352.    *Park* v. *Johnson*, 4 Allen, 259.    *Lee* v. *Kirby*, 104 Mass. 420.    *Chute* v. *Quincy*, 156 Mass. 189.    *Cathcart* v. *Robinson*, 5 Pet. 264, 271.    *Underhill* v. *Van Cortlandt*, 2 Johns. Ch. 339.    *Belchier* v. *Reynolds*, 2 Kenyon, 87.    *Weekes* v. *Gallard*, 21 L. T. (N. S.) 655.    Fry, Spec. Perf. (3d Am. ed.) § 424, note.    We are not satisfied that such was the case here.    It is to be observed that this is a suit directly between the company and a stockholder, to enforce a contract made with the company by the latter, and that the rights of third parties are not involved.    Many of the cases cited and relied upon by the defendant are cases where the rights of third parties are involved, and are therefore inapplicable to this.

The result is, that the plaintiff is entitled to a decree compelling the defendant to convey the shares upon payment by it of the amount of the appraisal with interest, and enjoining him from prosecuting the action at law.

*Ordered accordingly.*

*W. G. Russell & J. L. Stackpole*, for the plaintiff.
*L. S. Dabney & F. J. Stimson*, for the defendant.