# * THE VICTOR G. BLOEDE COMPANY *vs.* VICTOR G. BLOEDE.

*Corporation—Transfer of Shares of Stock—Invalidity of By-law Restricting Right to Transfer—Equitable Title to Shares.*

The power to regulate the transfer of stock does not authorize a corporation to control the alienation of shares by prescribing to whom the owner may sell, and upon what terms.

When a shareholder executes an assignment on the back of the certificate of stock, and delivers the same to another party, the latter has an equitable title to the stock without a transfer on the books of the company.

A by-law of the defendant corporation provided that if any stockholder should desire to dispose of his stock, he shall, before a transfer, notify the president of his intention to sell and of the price he can obtain, which notice shall be communicated to the other stockholders, who shall have the option to purchase the stock at the price named, in *pro rata* amounts, and the corporation shall have the right to take any such stock not taken by the shareholders. A large number of shares were originally issued to plaintiff for value. He afterwards caused some of the shares to be transferred to other parties, including a certificate for nine shares made out in the name of Y. Plaintiff alleged that the certificate was so made out in order to give Y. an opportunity to purchase them if he wished, while defendant alleged that it was done in pursuance of an agreement between plaintiff and the other chief owner of the stock that neither of them should own a majority of the shares. This allegation of the defendant was held not to be established by proof. Y. refused to accept or pay for the shares made out in his name, and assigned the certificate to the plaintiff, who demanded a transfer of the same back to himself. The defendant refused to make the transfer. *Held,*

1st. That the shares in question continued to be the property of the plaintiff, and a re-transfer of them to him, under these circumstances, was not a sale within the meaning of the by-law, even if it were valid.

---

* Appended to the case of *New England Trust Co.* v. *Abbott*, 162 Mass. 148, as reported in 27 L. R. A. 271, is a note on restrictions by by-laws or articles of association on the right to sell shares of stock.

2nd. That the above-mentioned by-law, when relied on by the company, is no obstacle to the transfer of the shares, because it is an invalid and unreasonable restraint upon the alienation of property.

Appeal from a decree of Circuit Court No. 2, of Baltimore City (HARLAN, C. J.), directing the appellant company to transfer to the appellee nine shares of the capital stock of the appellant standing upon its books in the name of Louis Yakel.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, PAGE and RUSSUM, JJ.

*John E. Semmes* (with whom were *Steele & Carey* on the brief), for the appellant.

The appellant contends: 1st. That it is not true as claimed in the bill of complaint that the issue of the nine or ten shares to Louis Yakel by Victor G. Bloede was the result of a mistake. That on the contrary Victor G. Bloede informed the other stockholders who purchased stock from him that he had made an arrangement with Yakel by which he had set apart ten shares for him. That he told Yakel that he had set apart these shares for him, and that it was not until after a disagreement and final settlement with Yakel eighteen months after the issue of the stock that Bloede attempted to obtain the stock in his own name. That Bloede disposed of 498 shares of his stock in the Bloede Company as the result of the statement that he (Bloede) would not individually control the stock by reason of the issue of ten shares to Yakel; that he received for this stock $2,400 in cash and 474 shares of the Bancroft Company's stock; upon which latter stock he had received as dividends at the time of the institution of this suit, $20,000.

2d. That the issue of this stock was the result of an agreement or understanding between Bloede and the Bancroft people, acted upon and adopted by the company by the issue of stock to Yakel, who was, by virtue of his

holding ten shares, to hold the balance of power between the Bloede and the Bancroft holdings.

3d. In order to enable Victor G. Bloede by parol testimony to avoid the effect of the by-law above set out in the transfer of stock issued after its adoption, he must not only prove that the issue of the stock was the result of a mistake, but he must also prove that no other person or persons have become the purchasers or owners of stock in the company by reason of his action in having the stock so issued. The mere fact that it was not paid for would not entitle him to claim that it was not subject to the by-law. This fact would entitle him to a lien upon the proceeds of the stock. If, as is contended, Victor G. Bloede informed others that Louis Yakel was to be the holder of ten shares of stock and these persons were influenced in their action in purchasing stock from Victor G. Bloede by reason of his statement, no misunderstanding between Bloede and Yakel as to whether the stock was to be a gift or purchase can release the stock so issued from the effect of the by-law.

The appellee contends that a corporation had no right to purchase its own stock. But "the general rule in the United States seems to be that the corporation has a right to purchase its own stock unless prohibited by statute." See *Thompson on Corporations*, sections 2061, 2062 ; also *Cook on Stock and Stockholders*, section 311 ; see also *First Nat. Bk. of Salem*, 39 Fed. Rep. 84, 96 ; *Republican Life Ins. Co.* v. *Swigart*, 135 Ill. 150, 163 ; *Williams* v. *Savage Mfg. Co.*, 3 Md. Ch. 451, 452 ; *Nat'l Bank of Charlotte*, 39 Md. 600. There is no statute prohibiting a company from purchasing its own stock. In Maryland, there are, in fact, a number of companies, notably the Canton Company of Baltimore, which continually advertises for the purchase of its own stock.

The second claim upon which this by-law is assumed to be void is that it is a restraint upon the alienation of the stock. It will be borne in mind that this is not a complete or unqualified limitation of the right to sell the stock, but

it merely grants an option upon the stock for 30 days, which if not availed of the party owning the stock has the right to dispose of it as he sees fit, so that the authorities quoted, based upon by-laws which prohibit the transfer of stock absolutely, are not applicable. A consideration of the authorities quoted by the appellee will show that in every instance the by-laws which were declared void upon this ground prohibited the transfer of stock *absolutely.* 1 *Thompson on Corporations,* sec. 1031, and authorities quoted.

The English authorities go further than the American, and decide that by-laws which might be construed into absolute restraint of the right of transfer of stock are good. See *Moffat* v. *Farquhar,* L. R. 7 Ch. Div. 605. There is no provision in the by-laws which prohibits the transfer of this stock on account of any indebtedness which may exist by the stockholder to the company which would defeat the right of creditors, nor is there any absolute restraint of the transfer of the stock ; the by-law merely creates an option for 30 days. Some suggestion was made in the Court below, that this by-law would be impracticable as it would be impossible to divide a very small number of shares of stock among a great many stockholders. This can be met in two ways. First, the corporation itself may purchase the stock ; second, the stock can be held by a trustee and fractional interests could be thus held for the benefit of those entitled. The question, however, of the validity or invalidity, the practicability or impracticability, of this by-law is not one that can be raised or advanced by the complainant in this case. As shown by the evidence, this by-law was adopted by a board of directors, at the time that he was the president of the company, and at the time that he was entitled to 994 shares of the stock. All the stock was issued under this by-law, and the parties purchased it from the complainant by reason of the existence of the by-law.

Under these circumstances its validity, so far as the parties themselves are concerned who adopted it and who have acted under it, is no longer an open question. Mr. Bloede

has received nearly $30,000 upon stock issued under this
by-law, and paid for because of the existence of the same.
The following authorities appear to settle this question:
that where a stockholder himself participates in the organ-
ization of a corporation or in the adoption of the by-laws he
cannot thereafter be allowed to controvert the legality of
the organization of the company or the validity of the by-
laws. *Dows* v. *Napier*, 91 Ills. 44. "Although a pro-
vision in a charter of a corporation with banking privileges
may be *unconstitutional*, still, if a stockholder has acted un-
der it, and thereby induced or contributed to the loss of a
creditor of the corporation, such stockholder will be estop-
ped from denying his individual liability under the charter."
*Freeland* v. *Penna. Ins. Co.*, 94 Pa. St. 504. In an action
by an insurance company for assessments upon a policy-
holder, the defendant contended that the contract should
not be enforced against him because the Act authorizing
the company to insure was *unconstitutional*. *Held*, that the
defendant, as a member of the company, could not take ad-
vantage of this; and that the invalidity of a charter could
not be inquired into collaterally, least of all by a member
who has enjoyed the benefit of its privileges. See also *Mc-
Carthy* v. *Lavasche*, 89 Ill. 270; *Willamette Co.* v. *Staunus*,
4 Oregon, 261; *Hager* v. *Cleveland*, 36 Md. 476; *Morri-
son* v. *Cleveland*, 48 Md. 461.

*George R. Willis* and *Robert Biggs*, for the appellee.

It will be observed that the alleged agreement set up in
this answer, even if fully proven, is between the Bancroft
Co. on the one side and the appellee on the other; it is not
even alleged that the appellant, or Yakel were parties thereto,
and the proof will show that neither the appellant, Yakel
or any of the other stockholders in the company, ever
heard of this alleged agreement until the bringing of this
suit.

The appellee insists that this answer, in so far as it sets up
or relies upon this alleged agreement, raises a false issue

and that the only logical issues are : First. Were the nine shares of stock in controversy at the time the certificate was issued to Yakel the property of the appellee ?    Second. Was there at any time an actual contract of sale between appellee and Yakel, whereby appellee agreed to sell and Yakel agreed to buy the stock ?    Third. If there was no contract of sale between appellee and Yakel, does the by-law, hereinbefore quoted—*if valid and enforceable*, affect the re-issue of this stock in the name of Bloede ?

The appellee claims that no such agreement ever existed as that which the Bancroft Co. attempts to set up in the answer filed by the appellant.    But conceding it to have been made as stated, it is insisted that the appellant can not set up that agreement in this suit.    As between a corporation and its stockholders, so far as its stock is concerned, the right of the company and its stockholders are fixed by the contract of the subscription, and the corporate records; and Courts have uniformly refused to allow secret agreements between stockholders or between stockholders and corporations to be introduced to vary these rights.    In *Converse* v. *Hood*, 149 Mass. 471, the facts were as follows : Converse had been induced to become a stockholder in a company by representations and assurances that the company would not engage in a particular business.    The stockholder who made these representations and who held the majority of stock in the company afterward gave notice that he intended to vote 'his stock to authorize the company to enter the business prohibited by this agreement.    The aggrieved stockholder filed his bill for an injunction against the stockholder and another bill for an injunction against the company.    The reason the subscriber did not wish the company to enter the prohibited business was, that it would by so doing injure the business of another company in which the subscriber was a large stockholder.    The Court held " as a contract, the alleged arrangement concerned the relations between the plaintiff and the corporation under the contract of subscription to the stock and was merged in it."

" The relative rights of the corporation and its stockholders are found in the contract of subscription." Apart from the consideration that that contract is in writing and cannot be varied by prior oral agreements between the parties, such a contract by a corporation with a particular stockholder limiting the rights of the corporation and of other stockholders is not one which can be specially enforced in equity. "A corporation is a trustee for its stockholders and hold its franchise for their benefit and it would be against first principles to enforce a promise made by an agent soliciting subscriptions, that its franchise shall be exercised in a particular manner for the benefit of one person in consideration of his becoming a stockholder."

The probabilities are all against their story set up by the Bancrofts ; they are intelligent men, accustomed to large transactions and the rules of business, and yet they would have the Court believe that the presence of an arbitrator in the Bloede Company was a condition precedent to their taking an interest in the company and that they agreed that Yakel, who they did not know, should buy stock and become an arbitrator between these large financial interests without ever asking him whether he would or would not buy and without disclosing to him the position he was to occupy or without knowing whether he would or would not accept the position. Now as to this by-law, there never was any clear understanding among the stockholders as to its functions. The declarations of all the parties at the time the by-law was adopted, shows what meaning they then put upon it and what they were seeking to accomplish. They intended the by-law to keep out objectionable outside parties and not to obstruct the transfer among themselves.

This by-law is not only impracticable, but that it is void as against public policy. In the recent case of *Trust and Savings Co.* v. *Home Lumber Co.*, 118 Mo. 447, a by-law almost identical with the one at bar was under consideration, it provided " any shareholder shall not assign any of his or her certificates of stock to any person not already a stock-

holder unless he or she shall have first offered the same to the board of directors and the purchase thereof refused by each and every member thereof at the prices offered by any other person."

The Court says, "it is very clear that the attempt of the director of the defendant company to adopt the by-law, restricting the right of its stockholders to convey their stock to any one until the said directors had refused to purchase it, or while indebted to the corporation was without warrant or authority of law, and as such is not binding on either the stockholders or those purchasing from them. The company itself had no right to pass such by-law. See also *Moses* v. *Scott et al.*, 84 Ala. 608. The cases are numerous where by-laws prohibiting transfers, except by consent of the president or board of directors or the secretary have been held void. The leading ones are, *Fechheimer* v. *Exchange Bank*, 79 Va 80; *Bank of Attica* v. *M. & T. Bank*, 20 N. Y. 501; *Sargent* v. *Franklin Gen. Ins. Co.*, 8 Pick. 90; *In re Klaus*, 67 Wisc. 401.

McSHERRY, C. J., delivered the opinion of the Court.

The bill of complaint which was filed in Circuit Court No. 2, of Baltimore City, by the appellee against the appellant, a body corporate, prayed that a decree might be passed enjoining and requiring the appellant to transfer upon its stockbooks, to the appellee, nine shares of its capital stock that were then and still are standing in the name of Louis Yakle; but which are claimed by the appellee to belong to and to be owned by him. It is averred in the bill that upon the formation of the Victor G. Bloede Company of Baltimore, which is the party appellant in this cause, the appellee became entitled to a large part of the company's capital stock, and believing that Louis Yakle intended to purchase from him nine shares thereof, he instructed the treasurer to make out a certificate in the name of Yakle for that number of shares, which was accordingly done. That the appellee then tendered the certificate to Yakle, who declined to receive or to

pay for it, because, as he insisted, its issue to him was un-
authorized and erroneous, and because he claimed no interest
in or title to it. That the certificate remained and still is in
the possession of the appellee. That the issual of the cer-
tificate to Yakle was a mistake on the part of both the ap-
pellant and the appellee, and that the nine shares of stock
represented thereby are the property of the appellee. The
bill further alleges that the appellee made a demand upon
the company for a transfer of these shares to himself, but
that the demand was refused upon the ground that a by-law
of the company regulating transfers had not been complied
with. The by-law in question reads as follows : " If any
stockholder shall desire to dispose of his stock, he shall, at
least thirty days before a transfer shall be made, notify the
president, in writing, of his intention to sell and of the price
he can obtain, which notice the president shall communicate
to the other stockholders, who thereupon shall have the
option to purchase the stock at the price named, in amounts
*pro rata* to the stock held by them respectively, and the
corporation shall have the option to take any such stock as
may not be taken by any stockholder individually."

The answer relies on this by-law and insists that the stock
certificate was regularly issued to Louis Yakle and that the
nine shares were properly placed in his name, and that the
certificate cannot be transferred to the appellee except in
accordance with the provisions of the by-law just transcribed.
The answer further goes into a detailed statement as to the
method in and by which the appellant company was formed;
sets forth the substance of an agreement alleged to have
been entered into between the appellee and the Joseph Ban-
croft and Son's company, a Delaware corporation, whereby
as a condition precedent to the latter corporation becoming
a large stockholder in the yet unformed appellant company,
a list of stockholders, including Yakle, with the number of
shares which each was to hold, was arranged, and then in-
sists that the nine shares in controversy were issued to Yakle
pursuant to this agreement and not by error or mistake
at all.

A large mass of testimony was taken, much of which, as is usual in such controversies, is irrelevant. After a hearing the Court below signed a decree granting the relief prayed. From that decree this appeal has been taken.

It appears that the appellee, who is a chemist, has for some years past been conducting a large business in Baltimore City as a manufacturer of dyes and colors made according to his own secret processes. The Joseph Bancroft and Son's Company of Wilmington, a body corporate, engaged in dyeing cloth, was one of the appellee's largest customers and dependent, to a considerable extent, upon him for some of the dyes and colors used by it. With a view of more closely identifying the interests of the two industries it was proposed that the appellee should cause a corporation to be formed to take over his entire business, and that the Joseph Bancroft and Son's Company should be allowed to have a part of the capital stock of the new corporation in exchange for an equal amount of the stock of the Wilmington Company. Thus the appellee would receive in the Bancroft Company an interest equal in value to the interest which the latter corporation would obtain in the business of the appellee. It is not material who proposed this scheme and we need not discuss this controverted question. After several interviews and some negotiations the scheme was finally consummated. There is wide and abrupt conflict in the evidence as to the results reached in these negotiations; but it would serve no useful purpose to enter into an analysis thereof, or to set forth the reasons or the lines of reasoning which influence and sustain the conclusions to which we have come in respect thereto; and hence we proceed, not to discuss the testimony bearing thereon, but after weighing it as we have carefully done, to state the deductions of fact, which a due consideration of all its details, in our opinion, warrants and justifies.

When the Victor G. Bloede Company was formed for the purpose of taking over the business of the appellee the articles of association fixed the capital stock at one hun-

dred and fifty thousand dollars; fifty thousand of which
was retained in the company's treasury; six shares were
issued to six of the incorporators and nine hundred and
ninety-four shares in one certificate to the appellee in pay-
ment for the plant and business turned over to the appellant
company.    Of the nine hundred and ninety-four shares the
appellee transferred to the Joseph Bancroft & Son's Com-
pany in exchange for an equal amount in value of its stock,
four hundred and seventy-four shares; he sold and trans-
ferred to John Hutton, an employee of the Bancroft Com-
pany, twenty shares; and he caused certificates to be made
out in the name of Glaeken for ten shares, and in the name
of Brown for five shares, under a special agreement with
these parties as to the method of payment, and one addi-
tional share to Nowlin and nine to Yakle, leaving four hun-
dred and seventy-five in his own name.    He thereupon
surrendered up and had the original certificate for nine
hundred and ninety-four shares cancelled.    Yakle had not
subscribed for these nine shares, nor did he authorize the
appellee to have them issued to him.    He was, at that time,
associated with the appellee in another business enterprise.
When the two certificates issued in the name of Yakle—
one for one share as an incorporator and one for the nine
shares now in controversy—were sent to Yakle, he declined
to accept or to pay for the nine shares on the ground that
he had never subscribed for them; and the certificate for
these shares was at once returned to the appellee, who
thereafter kept possession of it; and when he and Yakle
dissolved their other business connection Yakle signed upon
the certificate a transfer of the nine shares to the appellee.
Yakle never claimed to own these nine shares; he never
paid for them or had them in his possession.    It is these
nine shares that the appellant now refuses to transfer on its
books to the appellee.

From this statement it is obvious that these nine shares
were originally part of the nine hundred and ninety-four
shares issued in the first instance to the appellee by the ap-

pellant for value.   It is equally obvious that as between Yakle and the appellee there never was a purchase by the one or a sale by the other of these nine shares, or the semblance of a negotiation for the acquisition of them by Yakle in any way.   This is one of the undisputed features of the controversy.   It is manifest, then, that in so far as Yakle and the appellee are concerned, the latter never parted with his ownership of these shares, and certainly Yakle never supposed or contended that he, Yakle, had purchased them.   There was no gift of them to Yakle; there was no sale of them to him; he paid nothing for them, refused to take them when tendered to him, and afterwards endorsed the certificate over to the appellee.

There are two conflicting contentions as to how the certificate for nine shares came to be made out in the name of Yakle.   The appellee insists that he directed the treasurer of the company to so make it out, not because Yakle had agreed to take the stock, but because the appellee wished to give Yakle an opportunity to acquire it, though he did not then know whether Yakle would purchase the shares or not; whilst the appellant maintains that the certificate was made out in the name of Yakle pursuant to an agreement between the appellee and the Bancroft Company, so that neither the appellee nor the Bancroft Company, by having a majority of the stock, could control the corporation; but that the control might be in the hands of a neutral third party.   Each denies the contention of the other. Yakle was confessedly no party to the understanding set up by the appellant, and unless it be assumed that the appellee, for the purpose of preserving an equilibrium between himself and the Bancroft Company in the management of the Victor G. Bloede Company, deliberately agreed to gratuitously give away nine shares of his own stock for which he had paid value, the theory of the appellant cannot be adopted.   The probabilities are all against it and the flat denials of the appellee and other witnesses are sufficient to justify its rejection.

If, then, the stock issued in the name of Yakle was not issued under the agreement which the appellant sets up, these nine shares undoubtedly continued to be the property of the appellee; and if they continued to be his property a re-transfer of them to him was not a sale of them within the meaning of the by-law hereinbefore set forth; even if that by-law be conceded to be valid; and consequently that by-law furnishes no ground for refusing the relief sought by the appellee. The mere statement of this proposition is tantamount to its demonstration. If the shares belong to the appellee and have always belonged to him though a certificate was erroneously made out in the name of Yakle, then, if the by-law be valid and controls the transfer, each shareholder would be entitled to a *pro rata* proportion of these nine shares, even though the appellee did not desire to sell any of them. An attempt to re-transfer these shares would result in a forced sale of part of them to the other shareholders, though he wished to sell none of them. The transfer on the back of the certificate and the delivery of the certificate to the appellee completed his equitable title to the stock without a transfer on the books of the company, even if Yakle had ever had any interest in the nine shares. As between Yakle and the appellee the equitable title to the shares was complete upon the execution of the transfer; and, all other considerations out of view, the right to the shares then vested in the appellee. The entry of the transfer on the books of the company is required, not for the translation of the title, but for the protection of the parties and others dealing with the company; and to enable the company to know who are its stockholders entitled to vote at meetings and to receive dividends when declared. *Gemmell & Sinclair* v. *Davis & Co.*, 75 Md. 552; *Noble* v. *Turner*, 69 Md. 519; *Johnston* v. *Lafflin*, 103 U. S. 800.

But the by-law itself can, when invoked by the company, interpose no obstacle to the transfer of these shares for the reason that it is invalid. It is an unreasonable and a pal-

pable restraint upon the alienation of property. As a general rule stockholders indisputably have the right to sell their shares at pleasure. *Trisconi* v. *Winship*, 43 La. Ann. 45. That the power to regulate transfers of stock does not include authority to control its transferability by prescribing to whom the owner may sell and to whom not, or upon what terms ; and that the mere power to regulate transfers does not authorize a refusal to allow a transfer of shares to even an insolvent is decided in *Choutsan Spring Co.* v. *Hanis*, 20 Mo. 383. And so a by-law prohibiting the alienation of shares of stock or imposing any restrictions on its exercise is declared to be in restraint of trade and against public policy and void in *Moore* v. *Bank of Commerce*, 52 Mo. 377 ; *Re Klaus*, 67 Wis. 401 ; *Brinkerhoff Farris Trust & Sav. Co.* v. *Home Lumber Co.*, 118 Mo. 447 ; *Feckheimer* v. *Nat. Ex. Bk. of Norfolk*, 79 Va. 80. And in *Am. Nat. Bk.* v. *Oriental Mills*, 17 R. I. 551, in considering a similar by-law it was held without passing on its validity, that no one but the stockholders could take advantage of the non-compliance with the by-law, and that they had the power to waive it. And in *Ireland* v. *Globe Milling & Reducing Co.* (R. I.) 29 L. R. A. 429, it was decided that a by-law giving the corporation the first right to purchase stock which is for sale by any of its members, is not valid under a statute specifying several subjects upon which by-laws may be enacted, but making no reference to the question of stock-transfers. See also *Farmers' Bk.* v. *Wasson*, 48 Iowa, 339 ; *Sargent* v. *Franklin Ins. Co.*, 8 Pick. 90.

The cases in 36 Md. 491, and 48 Md. 473, and others cited are distinguishable, for there the invalidity relied on by the stockholders was invoked to defeat the claim of a *creditor*.

As we shall affirm the decree appealed from, we have not thought it worth while to consider the motion made to dismiss the appeal.

> *Decree affirmed with costs above and below.*

(Decided June 18th, 1896).