[L. A. No. 3780.   In Bank.—January 29, 1917.]

## RIVERSIDE LAND COMPANY, Appellant, v. JOSEPH JARVIS et al., Respondents.

WATER CORPORATIONS—FURNISHING WATER FOR IRRIGATION—EASEMENT —CONSTRUCTION OF SECTION 552, CIVIL CODE.—Under section 552 of the Civil Code, land owners who had been furnished with water by companies referred to in said section to irrigate lands which such companies had sold to them, or which were on the line and within the flow of the ditches of the system, became entitled to continue to receive such water permanently for that purpose. As to the land sold by such companies, the right would be an easement attached to the land sold. As to other lands so furnished, it would be, at least, a right to continued use of the water thereon.

ID.—RIGHTS OF WATER USERS.—Where a large area of land, devoted to orange culture, was irrigated and kept productive by use of water from a system owned and operated by a canal company, the rights of the several land owners to the use of the water being of various origins, some gaining a private right by prescription, some acquiring a private right under a water right agreement, some having rights under section 552 of the Civil Code, and others no well-defined right except as beneficiaries of a public use, and the board of supervisors of the county fixing the rates to be charged for water for irrigation, in which the users and the company acquiesced, the rates fixed being charged and paid, the respective owners of land irrigated from the system had, while they owned the land, rights to the use of the water in control of the company, either private rights, or rights as members of the "public," to whose use the water was dedicated, which rights were either appurtenant to the land as private rights, or attached to the land because of the dedication thereto for public use, and the private easements were burdens or servitudes upon the water system, and the public use was a burden on the system as to the remainder of the water, and it was not within the power of the company, without the consent of the users, to divest the private rights or to shift the public use to other lands.

ID.—WATERS DEDICATED TO PUBLIC USE—PRIVATE PREFERENTIAL RIGHTS CANNOT BE CREATED IN — EFFECT OF ARTICLES AND BY-LAWS OF WATER COMPANY.—That water dedicated to public use cannot lawfully be converted into a private use so as to create a private preferential right thereto for the benefit of a specific parcel of land, is a well-established proposition; but such is not the effect of the articles and by-laws of a water company providing in substance that certificates of stock shall be transferable only with the land to which they are attached.

ID.—AGREEMENT OF WATER USERS FOR ATTACHMENT OF STOCK TO LAND—
REASONABLENESS OF.—An agreement between persons who are entitled to the first right to the use of a certain supply of water to
form a corporation to acquire such supply and distributing canal,
and that the articles of incorporation shall provide that stock is to
be issued only to the owners of land entitled to the water, two
shares of stock for each acre of land, that the stock shall be attached
to such land and shall be transferable only with the land and upon
the presentation of a conveyance thereof from the former holder,
and that such stockholders shall have the first right to the water,
cannot be said to be unreasonable; and if not, the articles and by-
laws made in pursuance of and to carry into effect such agreement
are not unreasonable.

ID.—VALIDITY OF AGREEMENT—GENERAL POLICY OF LAW—CONSTRUCTION
OF SECTION 324, CIVIL CODE.—That such an agreement is not contrary
to the general policy of the law is shown by the amendment of 1895
to section 324 of the Civil Code, providing, in substance, that a corporation organized to sell or distribute water for irrigation or
domestic use, may declare in its by-laws that the water shall be distributed only to stockholders, that the stock shall be appurtenant
to the land described in the certificate, shall be only transferred
with such land, and shall pass with a conveyance thereof; and such
agreement does not violate the provision of said section that shares
of stock "may be transferred by indorsement" and "delivery of the
certificate."

ID.—ARTICLES, BY-LAWS, AND CERTIFICATE EVIDENCE OF AGREEMENT.—
The articles, by-laws, and certificate constitute the evidence of the
contract between the parties in such case, and taken together they
are, in effect, an agreement between the stockholder and the company that the stock shall be transferable only with the land and,
conversely, that a transfer of the land shall pass to the grantee
thereof the right to the stock,—that is, the equitable title thereto. ·

ID. — RIGHT OF COMPANY TO OPERATE DIFFERENT SYSTEMS — RIGHT OF
LAND OWNERS NOT AFFECTED BY PUBLIC SERVICE.—A water company may lawfully carry on at the same time two or more separate
and distinct systems of public service in different places, or for different uses in the same territory, and the fact that such a company
is also engaged in the public service of selling and distributing
water for domestic use does not affect the reciprocal right and obligations of the stockholders and the company with regard to the
stock issued in pursuance of the articles and by-laws.

ID.—PURCHASE OF LAND—RIGHT OF PURCHASER TO STOCK.—The conveyance of the land in such a case, either directly or upon foreclosure,
creates an implied contract by the grantor or former owner to yield
up the certificate to the grantee, and such agreement may be enforced and certificates transferred on the books of the company.

APPEAL from a judgment of the Superior Court of Riverside County, and from an order denying a new trial. F. E. Densmore, Judge.

The facts are stated in the opinion of the court.

Purington & Adair, for Appellant.

McFarland & Irving, and T. T. Porteous, for Respondent Joseph Jarvis.

A. H. Winder, for Respondent Riverside Water Company.

SHAW, J.—The plaintiff appeals from the judgment and from an order denying its motion for a new trial.

The object of the action is to obtain a judgment directing the defendant, Riverside Water Company, to transfer to the plaintiff 154 shares of the capital stock of said defendant Water Company. The certificates outstanding, representing these shares, are in the control and possession of the defendant, Joseph Jarvis, and he refuses to deliver the same to the plaintiff, though requested so to do. The right which the plaintiff claims to these shares is based on the following facts:

The Riverside Water Company was organized as a corporation in 1885. By its articles of incorporation it was empowered to take, acquire, buy, own, sell, and lease water and water rights, ditches, canals, dams, reservoirs, and structures connected therewith, "and all easements and rights in respect of water and the uses of water appurtenant to any lands in this state, together with all lands and rights of way necessary or proper for any of the purposes aforesaid, or for other purposes," to use the water or dispose of the same to others to be used, and to control, manage, and use the ditches, canals, and other works aforesaid. Subdivisions 4 and 6 of article II further describe the purposes of the corporation as follows:

"4. To furnish, sell, lease, give and supply water to all lands represented by stock of this corporation, and thereafter for use for mechanical, agricultural, irrigation and other purposes, in such manner and upon such terms as it may deem fit, or as may be prescribed by law."

"6. To make such by-laws, rules and regulations as it may deem proper and necessary for the management and preser-

vation of its works, and for the use and distribution of the water under its control.''

Article VIII is as follows:

''To issue certificates of stock of such form and device as the board of directors may direct, and such certificates shall express on their face the number of shares for which and the tract of land to which they shall be attached, upon the basis of two shares of stock to each acre of land, the said tract of land being in the possession and ownership of the person to whom the certificates are to be issued.''

Articles IX and X of the by-laws contain provisions of like effect as said article VIII, and the further provision that certificates of stock should be ''transferable only with the land to which they are attached,'' and that the party asking for a transfer of stock should present to the secretary his conveyance of the land before the issuance of the new certificate.

The certificates of stock here sought were issued by the Riverside Water Company while the aforesaid provisions were in force. Certificate 1038 for one hundred shares was issued to Mary A. Jarvis, wife of Joseph Jarvis, on October 13, 1894. Certificate 1007 for fourteen shares was issued to Mary A. Jarvis on May 19, 1894. Certificate 711 for forty shares, only twenty of which are here claimed, was issued to Joseph Jarvis on May 7, 1889. Certificate 2292 for eighty shares, of which only twenty shares are here claimed, was issued to Joseph Jarvis on February 15, 1907. They were all of the same form. The following copy of the one last mentioned shows the form of all of them:

''No. 2292.                                        80 shares

''Incorporated Under the Laws of California, January 2, 1885.

''Riverside Water Company.

''Capital Stock $240,000.   24,000 shares.   $10. each.

''Riverside, County of Riverside, State of California,
                                      ''Feby. 15, 1907.

''This certifies that Joseph Jarvis is entitled to eighty shares of the capital stock of the Riverside Water Company, which are attached to the following described tracts of land situated in the city of Riverside, to wit: Lots 9, 13, 14 and 16 Block 7, lands of the Riv. Land & Irrigation Co., containing 40 acres of land and transferable only on the books of the

company by endorsement hereon and surrender of this certificate.''

At the time of the issuance of the certificates to Mary A. Jarvis and Joseph Jarvis, respectively, they each owned the tract of land to which the shares are therein respectively declared to be attached. After the issuance of said certificates both Mary A. and Joseph Jarvis, by foreclosure proceedings and conveyances, were divested of the title to the seventy-seven acres of land here involved, and, through mesne conveyances, the plaintiff, on April 21, 1911, became the owner thereof. By virtue of this ownership, and under said articles of incorporation and by-laws, it claims to be the owner of the 154 shares of the stock declared by said certificates to be attached to the seventy-seven acres of land. The certificates for these shares were retained by Jarvis and his wife, respectively, when their titles to the lands were divested, and they have never been in possession of the plaintiff. Mary A. Jarvis afterward died and the decree of final distribution of her estate purports to distribute the aforesaid certificates issued in her name to Joseph Jarvis. Thus the title to the land and the manual possession of the certificates have passed to different persons, plaintiff having the title to the land and the defendant Joseph Jarvis the possession of the certificates.

It will aid in the interpretation of these articles and by-laws to state briefly some conditions of fact and of law existing at the time of the incorporation of the company.

The Riverside water system had its origin in 1869. In that year the California Silk Center Association appropriated water from the Santa Ana River, near San Bernardino, and carried it by canals and flumes to the plateau at Riverside, to be there used for the irrigation of farm lands. The system was thereafter owned and carried on successively by several other corporations. The Southern California Colony Association owned and operated it from September 15, 1870, to March 3, 1877; the Riverside Land & Irrigating Company from that date to July 26, 1879, and the Riverside Canal Company thereafter until June 1, 1885, when it was transferred to the Riverside Water Company. These companies appropriated more water and extended the system considerably from time to time. In some cases they sold to the respective land owners so-called water rights for their

lands. By a water right we mean a contract by the water company with the land owner by which it agreed to furnish water to the land each year, forever, for its irrigation, either at a fixed annual rate or for a lump sum. In other cases the land owner did not buy such water right, but bought water from the company from year to year, as needed. The respective companies owned large tracts of land on the plateau under the flow of the canals. They sold and conveyed parcels of this land to farmers with a water right from the canal system attached thereto. In other instances they sold water rights for lands which the company had not sold to the owner. In still others they sold parcels of the land without a water right, but afterward furnished water to irrigate the same as demanded. The lands here involved were of the latter class, except that the parcel described in certificate 1038 has never received any water. In the early part of this period a question arose concerning the permanency of the right of the land owners to the water thus furnished, where no water right agreements were executed, and to settle such question, at the instance of Mr. Satterwhite, member from San Bernardino, the legislature, on April 3, 1876, enacted section 552 of the Civil Code, which reads as follows:

"Whenever any corporation, organized under the laws of this state, furnishes water to irrigate lands which said corporation has sold, the right to the flow and use of said water is and shall remain a perpetual easement to the land so sold, at such rates and terms as may be established by said corporation in pursuance of law. And whenever any person who is cultivating land on the line and within the flow of any ditch owned by such corporation, has been furnished water by it with which to irrigate his land, such person shall be entitled to the continued use of said water, upon the same terms as those who have purchased their land of the corporation."

Under this section the land owners who had been furnished with water by said companies to irrigate lands which such companies had sold to them, or which were on the line and within the flow of the ditches of the system, became entitled to receive such water permanently for that purpose. As to the land sold by such companies, the right would be an easement attached to the land sold. As to other lands so fur-

CLXXIV Cal.—21

nished it would be, at least, a right to the continued use of the water thereon.

The water system acquired by the Riverside Canal Company in 1885 had grown up and was operated under the conditions stated. A large area of land, devoted to orange culture, was irrigated and kept productive by the use of this water. The rights of the several land owners to the use of the water were of various origins; some had gained a private right by prescription, some had acquired a private right under a water right agreement, some had rights under section 552, and others no well-defined right except as beneficiaries of a public use. The board of supervisors of the county had fixed the rates to be charged for water for irrigation, and, so far as appears, the users and the company acquiesced therein and the rates fixed were charged and paid. All the interested parties seemed to agree that the water of the system was devoted to public use, that the particular lands to which the water was furnished comprised the territory to which the water was dedicated, that the owners thereof were the beneficiaries of the use, and that the Canal Company was the administrator thereof, at least so far as the establishment of water rates was concerned. It is probable that they were mistaken in this as to a part of the water and particular tracts of land. As the land owners are not parties to the action, it would not be proper to decide the question, and we find it unnecessary to do so. It is sufficient for the purposes of the case to declare that the respective owners of land irrigated from the system had, while they owned the land, rights to the use of the water in control of the company, either private rights, or rights as members of the "public" to whose use the water was dedicated, that these rights were either appurtenant to the land as private rights, or they were attached to the land because of the dedication thereto for public use, that the private easements were burdens or servitudes upon the water system, that the public use was a burden on the system as to the remainder of the water, and that it was not within the power of the company, without the consent of the users, to divest the private rights or to shift the public use to other lands. This is a correct statement of the law as we conceive it to be.

The Riverside Water Company was organized by the persons who were at the time receiving and using the water of the

system thus owned by the Riverside Canal Company. The latter company also owned a large body of vacant land which it held for sale. The water users desired to separate the ownership and control of the water system from the ownership of that land. They therefore formed two corporations, the Riverside Land Company, plaintiff herein, to acquire the land of the Canal Company and deal in land, and the Riverside Water Company, to acquire the said water system and operate the same. One of the chief objects, with regard to the Water Company, was to get all the persons who owned land within the flow of the canals and who had been using water therefrom to irrigate such lands, to become stockholders in the new water company in proportion to the area irrigated and to provide some method by which the control of that company would be kept in the hands of those who rightfully used the water. It was mainly for the latter purpose that the above provisions were framed and inserted in the articles and by-laws.

The Water Company was accordingly formed, and it thereupon acquired said water system by conveyance from the Riverside Canal Company on July 1, 1885. All but a very few (all but two, Jarvis testified) of the previous water users became stockholders of the Water Company in pursuance of this plan. Thereafter the Water Company continued the distribution of the water as before. It conceded that the right of the few users who did not take stock was not divested by that fact, and it has continued the service to them at the established rates.

The Water Company in its answer joins in the prayer of the complaint. The active defense is made by Jarvis. He claims that the stock belongs to him, although he does not own the land to which it is declared to be attached, nor any other land. On his behalf it is contended: (1) That the water was dedicated to public use and that the provision that the stock should be attached to the lands described in the certificate therefor constituted an attempt to give that land a preferential right to receive a part of the water so dedicated, to convert, to that extent, the public use into a private right, which, under the principles laid down in *Leavitt* v. *Lassen Irr. Co.*, 157 Cal. 82, [29 L. R. A. (N. S.) 213, 106 Pac. 404], *Southern P. Co.* v. *Spring V. W. Co.*, 173 Cal. 291, [159 Pac. 865], and other decisions of this court, may not be done. (2)

That the provisions of the articles and by-laws of the Water Company to the effect that its stock should only be transferred with the land to which it was declared to be attached, constitute an unreasonable restraint on alienation, which is beyond the power of the corporation, and that the provisions are, consequently, void. (3) That the articles, by-laws, and certificates of stock do not constitute a contract between the corporation and the stockholder whereby the stockholder agrees that a transfer of the land described in the certificate shall operate as a transfer of the right to the shares represented by the certificate, or that the stock shall be transferred only with said land.

1. That water dedicated to public use cannot lawfully be converted into a private use so as to create a private preferential right thereto for the benefit of a specific parcel of land is a well-established proposition, and is laid down in the cases referred to. But we do not think that this is the effect of the articles and by-laws of the company. So far as the validity of a provision that a conveyance of the land carries to the grantee a right to the stock which "represents" the land, as the articles put it, is concerned, it is immaterial whether the right of the owner to receive water for the land, at the time the Water Company acquired the system, was a public right or a private right. As to the private rights, if any, they would be appurtenances to the land, entitling it to receive water from the system, and the service of that water to that land must have been continued by the company, in any event, since it was the owner's right to have it so continued. In such a case a sale of the land after the acquisition of the system by the company would carry the right to the water as an appurtenance. There would obviously be no conversion of a public right into a private right, but the private right would continue as before.

If the right was a public right pertaining to the land by reason of the fact that it was a part of the territory to which the public use for irrigation had attached, as must have been the case if the land was at that time lawfully receiving the water dedicated to public use, then it would be the duty of the Water Company to continue to supply to that land a reasonable proportion of the water so dedicated to the public use. Whether dedicated to public use upon a class of lands not all contiguous, or upon all lands within a defined territory,

such water could not lawfully be diverted to other lands by the agent in charge of the use, but must be supplied to the land to which it is dedicated. (*Fellows* v. *Los Angeles,* 151 Cal. 52, 64, [90 Pac. 137]; *Hewitt* v. *San Jacinto etc. Dist.,* 124 Cal. 186, [56 Pac. 893]; *South Pasadena* v. *Pasadena etc. Co.,* 152 Cal. 587, [93 Pac. 490]; *Del Mar etc. Co.* v. *Eshleman,* 167 Cal. 666, [140 Pac. 591, 948].) It would be to the interest of the land owner benefited by such a public use to have a voice in the control of the company in charge of the use, as well as to the interest of those having a private right. It would, therefore, be to the interest of all the shareholders, under the plan devised, and, consequently, to the interest of the company, that none but users of the water, entitled as beneficiaries, should have stock of the company or a voice in its control. The continuance of the service, under these circumstances, would not be a conversion of a public use into a private use, but would be a mere continuance of a public use already existing. In such a case it would be entirely reasonable to provide that a sale of the land so beneficially entitled should carry the stock which is evidence for the owner of the land of his right to participate in the use of the water and in the control of the corporate agent in charge of the use. Such corporate agent would remain subject to the regulation and control of the public authorities thereafter, as before, notwithstanding the arrangement that stock therein would pass with the land to which it was declared to be attached.

It may be that the fifty acres represented by certificate 1038, which was never supplied with water, is not now entitled to any unless there should be a surplus in the control of the company after supplying all lands which have heretofore lawfully received water. The issues in this case do not require us to decide the question as to the right to water. We are concerned only with the right to the stock, and that right is not affected by the fact, if it be a fact, that the company has no water to furnish to that particular parcel of land.

2. There are decisions holding that restrictions upon the sale or transfer of corporate stock which are unreasonable cannot be imposed by provisions in its articles or by-laws. A provision that the transferee of stock should vote for every increase of capital stock proposed by the directors has been held to be unreasonable and void. (*McNulta* v. *Corn Belt*

*Bank,* 164 Ill. 427, [56 Am. St. Rep. 203, 45 N. E. 954].)
Of a by-law which required thirty days' previous notice of
a proposed transfer and of the price thereof, and gave the
company or other stockholders the preferred right to buy it
at that price, the court said that it was an unreasonable
restraint upon alienation "when invoked by the company."
(*Bloede Co.* v. *Bloede,* 84 Md. 129, [57 Am. St. Rep. 373, 33
L. R. A. 107, 34 Atl. 1127].) The decision in *New England
Tr. Co.* v. *Abbott,* 162 Mass. 152, [27 L. R. A. 271, 38 N. E.
432], seems to be opposed to the last-named case and to hold
that such contracts are valid. And a provision in the articles
that stock should not be transferred until all debts of the
holder to the corporation were paid, although inconsistent
with the general law giving the right to transfer property,
has been held to be valid, and not contrary to public policy
nor in contravention of express law. (*Gibbs* v. *Long Island
etc. Co.,* 83 Hun, 92, [31 N. Y. Supp. 406]; *Mechanics' Bank*
v. *Merchants' Bank,* 45 Mo. 516, [100 Am. Dec. 388]; *St.
Louis I. Co.* v. *Goodfellow,* 9 Mo. 149.) In *Lum* v. *Ameri-
can Wheel etc. Co.,* 165 Cal. 661, [Ann. Cas. 1915A, 816, 133
Pac. 303], a provision in the articles, and stated in the cer-
tificates, that the paid-up capital stock should not be assessed,
was declared to constitute a valid contract between the cor-
poration and its stockholders. The court said: "A corpora-
tion may enter into an agreement to do or refrain from doing
something when such action is not contrary to express law,
or to public policy. . . . Such contracts may even go so far
as to provide for a surrender by one of the parties of some
privilege otherwise granted by law."

An agreement between persons who are entitled to the first
right to the use of a certain supply of water to form a cor-
poration to acquire such supply and distributing canals, and
that the articles of incorporation shall provide that stock is
to be issued only to the owners of land entitled to the water,
two shares of stock for each acre of land, that the stock shall
be attached to such land and shall be transferable only with
the land and upon the presentation of a conveyance thereof
from the former holder, and that such stockholders shall
have the first right to the water, cannot be said to be unrea-
sonable. If not, the articles and by-laws made in pursuance of
and to carry into effect such agreement are not unreason-
able. On the contrary, it is founded on prudence and reason,

designed, as it would obviously be, to keep the control of the distributing company in the hands of those entitled to the use of the water. The beneficial effects in this case are shown by the fact that the Water Company has kept the rates down to the sum required to provide for expenses of distribution and maintenance, and has not attempted to make profits in any other manner.

That it is not contrary to the general policy of the law is shown by the amendment of 1895 to section 324 of the Civil Code, providing, in substance, that a corporation organized to sell or distribute water for irrigation or domestic use may declare in its by-laws that the water shall be distributed only to stockholders, that the stock shall be appurtenant to the land described in the certificate, shall only be transferred with such land, and shall pass with a conveyance thereof, a plan not essentially different from that adopted by the incorporators of the Riverside Water Company. It does not violate the provision of section 324 that shares of stock "may be transferred by indorsement" and "delivery of the certificate." This language does not forbid the making of agreements to transfer, nor the making of contracts, good between the parties, that a certificate shall pass with the transfer of certain other property. Corporate stock would be transferable without such provision. (Civ. Code, sec. 1044.) The provision merely prescribes a mode by which the transfer may be made. It does not prohibit a transfer by other methods, nor declare that when made in another manner a transfer may not be enforced by the party entitled to the shares. Specific performance lies in such cases. (*Feckheimer* v. *National Exch. Bank,* 79 Va. 83; *New England T. Co.* v. *Abbott,* 162 Mass. 152, [27 L. R. A. 271, 38 N. E. 432].) The articles and by-laws of this company do purport to prevent a lawful transfer, except with the land, without the consent of the corporation. But the agreement not to transfer the stock except with the land is voluntarily made by the person taking the stock. As it is not unreason·· able or immoral, nor expressly forbidden, it is a contract which a person may lawfully make concerning his property and which may be enforced against him.

3. The articles, by-laws, and certificate constitute the evidence of the contract between the parties. Taken together they are, in effect, an agreement between the stockholder

and the company that the stock shall be transferable only with the land and, conversely, that a transfer of the land shall pass to the grantee thereof the right to the stock,—that is, the equitable title thereto. Respondent admits that it was an agreement on the part of the stockholder that the stock should be transferable only with the land. Its language to that effect is too clear for dispute. This being so, it must follow either that a transfer of the land carries the equitable title to the stock, or that the ownership thereof will forever remain in the original holder of the certificate, which seems absurd. But the agreement went further, and provided that the stock should be "attached" to the land. It is not provided that it shall be detached by a sale of the land. The plain intent is that it shall remain attached and that the ownership thereof shall follow the ownership of the land to which the water must be furnished. If it is to remain attached after the land is conveyed, it must pass with the land. This is the natural effect and the clear meaning of the provision. It is a contract made by the land owner for the benefit of the company, the other stockholders, and also of the grantee of the land. The grantee becomes the owner of the equitable title to the stock, and he may enforce the contract made for his benefit. (Civ. Code, sec. 1559.)

The distribution of the shares, issued to Mrs. Jarvis, to her husband upon the settlement of her estate gave him no right additional to those she possessed therein. The obligation may be enforced against him as to all the shares.

After the Water Company had acquired the water, canals, and works of the canal company, it also acquired another water supply and system of pipes installed to furnish water for domestic uses to the inhabitants of the city of Riverside. It has ever since operated said domestic system, furnishing water therefrom to all persons without regard to their ownership of land or stock. The court found these facts, as we suppose, in support of its theory of the case that if the Water Company was engaged in public service of water, the land could not be attached to its stock. The two water systems were wholly separate and distinct, and the water furnished for domestic use was obtained from a source not acquired from the Canal Company. A water company may lawfully carry on at the same time two or more separate and distinct systems of public service in different places, or for different uses in the same

territory. The fact that this company was also engaged in the public service of selling and distributing water for domestic use in Riverside does not affect the reciprocal rights and obligations of the stockholders and the company with regard to the stock issued in pursuance of the articles and by-laws. The finding is immaterial to the case.

The finding that the Water Company had allowed persons to vote as stockholders and to act as directors who did not own stock attached to land owned by them is not sustained except by evidence to the effect that in some instances where the land was conveyed the stock was not at once brought in by the parties for transfer to the grantee, and in the meantime the original stockholder appeared on the books to own the stock and was permitted to vote the same, no objection being made by the grantee. These facts are also of no importance to the questions decided.

For the reasons we have given we are of the opinion that the court below erred in holding that the certificates of stock were held by Jarvis free of any claims of the plaintiff. It is unnecessary to declare that the certificates are appurtenant to the parcels of land described. It is sufficient for the plaintiff's purpose that the conveyance of the land, either directly or upon foreclosure, creates an implied contract by the grantor, or former owner, to yield up the certificate to the grantee, and that plaintiff is entitled to enforce such agreement and have the certificates transferred on the books of the company.

The judgment and order are reversed.

Lorigan, J., Melvin, J., Sloss, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.