[Civ. No. 3162.   Third Appellate District.—June 22, 1927.]

MARY ESTELL CROCKER, Executrix, etc., Appellant, v. MARY ESTELL CROCKER et al., Respondents.

Gaffney & Zagoren for Appellant.

C. E. McLaughlin and Henry S. Lyon for Respondents.

HART, J.—The complaint originally filed herein was by the plaintiff above named and against the Western States Life Insurance Company and one Warren Crocker to recover on a life policy of insurance on the life of the plaintiff's testate in the sum of $1,867.16, and, as a second cause of action, to have adjudged that 110 shares of the stock of defendant Insurance Company are the property of and rightfully belong to the estate of the deceased.

The beneficiary named in the insurance policy upon which recovery is sought by the plaintiff, as executrix, etc., is Warren Crocker, the brother of the deceased. The shares of stock referred to are in the name of "Crocker Brothers," the firm name or designation by and under which the deceased and said Warren Crocker, during a long period of time prior to the death of the former, conducted general merchandise stores in the county of El Dorado. The plaintiff is the widow of the deceased, William Franklin Crocker.

On December 27, 1924, all the parties entered into and filed a written stipulation in which it was stated: That the Western States Life Insurance Company "admits its liability in the sum of $1,867.16 under the policy mentioned in plaintiff's complaint," that "in said policy, and upon the records of said defendant, said Warren Crocker appeared as the beneficiary under said policy," and that the said Warren Crocker, as such named beneficiary, and the plaintiff, Mary Estell Crocker, individually, and as the widow of the deceased, have each made a claim to the money payable on said policy, that each has made a demand on the defendant Insurance Company for the payment thereof, and that the claims so made are conflicting. It is further stated in

the stipulation that defendant Insurance Company "is unable to determine the merits of the said conflicting claims of the said parties to the proceeds of said policy and cannot safely pay the same to any of said claimants without an adjudication of the rights of said claimants; that said defendant (Insurance Company) is anxious and willing to pay to the party or parties entitled thereto the said sum due under said policy and is willing to deposit said sum in this court to await the determination of said court as to the party or parties entitled thereto." It was further stipulated that the defendant Insurance Company, the defendant Warren Crocker, and the plaintiff Mary Estell Crocker are willing that the sum of money due and payable on said policy may be deposited with the court, and that the said Mary Estell Crocker and the said Warren Crocker may be substituted as defendants in this action in the place and stead of defendant Insurance Company and that the last named may "be dismissed from this action and discharged from further liability with reference to said policy upon the deposit of said sum with the clerk of this court." As to the controversy between Mary Estell Crocker and Warren Crocker over the shares of stock mentioned in the complaint, it was agreed and stipulated by the parties that no stock stands upon the books of said Insurance Company in the name of William Franklin Crocker, and that, so far as known to said defendant (Insurance Company) said William Franklin Crocker, at the time of his death, owned no stock of said defendant; that the stock here in dispute "consists of 110 shares of the capital stock of said defendant, standing upon the books of defendant in the name of 'Crocker Brothers,' . . . ; that said Warren Crocker has possession of said certificates of stock and claims to be the owner of said stock; . . . that defendant (Insurance Company) makes no claim to said stock adversely to plaintiff, or either to said Mary Estell Crocker or Warren Crocker, and is willing to abide by the determination of this Court as to the ownership thereof and of the dividends heretofore declared and unpaid and hereafter to be declared upon said stock." The stipulation proceeds, as in the case of the conflicting claims of the Crockers to the insurance money, that defendant Insurance Company is willing to deposit in court the money due as dividends on said stock, and that the right

thereto, as between Warren Crocker and Mary Estell Crocker, as executrix, etc., be litigated in and determined by the court, said Insurance Company expressly disclaiming any interest in or right to said stock; that, as to said second cause of action, said Warren Crocker and said Mary Estell Crocker, be substituted as defendants in the place of defendant Insurance Company and that the latter be dismissed from said action as a party defendant thereto and discharged from all liability with relation to said stock; that said Mary Estell Crocker and said Warren Crocker are willing that said dividends be deposited with the court, that they be substituted as defendants as to said second cause of action in place of defendant Insurance Company, and that the latter be dismissed from said action and discharged "from all further liability with reference to said stock or said dividends upon the deposit of said dividends with the clerk of this court." It was stipulated by the parties that the court be authorized to make and enter an order in pursuance of the provisions of said stipulation. Upon a filing of said stipulation and the depositing by defendant Insurance Company of the money referred to with the clerk of the court, an order was duly made and entered eliminating the defendant Insurance Company from the action as a party thereto and substituting as defendants, in place of the Insurance Company, Mary Estell Crocker and Warren Crocker.

On January 23, 1925, an amended complaint was filed by Mary Estell Crocker, as executrix of the estate of her deceased husband, in which she and Warren Crocker were alone named as defendants. The allegations of the amended complaint are substantially the same as those of the complaint as originally framed and filed. It is alleged in said complaint, as the first cause of action therein set up, that the Western States Life Insurance Company, on the twenty-first day of December, 1910, made and executed its policy of insurance upon the life of said William Franklin Crocker, payable to Warren Crocker; that William Franklin Crocker died testate, at the town of Camino, in the county of El Dorado, on the twenty-fifth day of June, 1923; that plaintiff is the widow of said deceased, and by due proceedings held in the superior court of the county of El Dorado she was appointed executrix of the last will and testament of de-

ceased; that in the month of February, 1923, "and thereafter, and up to the time of his death, the deceased, William Franklin Crocker, requested said Insurance Company to change the beneficiary in said insurance policy to his wife, Mary Estell Crocker, this plaintiff, and during said time applied to the said Insurance Company to have the said beneficiary changed from his brother Warren Crocker to his said wife, Mary Estell Crocker, plaintiff herein." It is further alleged that by the terms of said policy the right to remake and change the beneficiary under said policy was reserved to the insured; that deceased "did everything in his power to have said change in said beneficiary (from Warren Crocker to plaintiff) made before his death," but that said Warren Crocker, at all times having possession of said policy, refused to surrender the same and represented and claimed that said policy had been lost; that for years before the death of William Franklin Crocker "his said brother Warren Crocker took and had possession of said policy of insurance," and, by representing to the deceased that the same was lost and his refusal to surrender the same, "prevented the change of beneficiary from himself to this plaintiff against the will of deceased." There are certain formal allegations which need not be recited herein.

The basis of the second cause of action involves, as above explained, the controversy between the plaintiff, as executrix, etc., and Warren Crocker, over the ownership of the 110 shares of stock, as set forth in the stipulation of the parties that the Insurance Company interplead and be dismissed as a defendant in the action and Warren Crocker and plaintiff be substituted as defendants.

Mary Estell Crocker, in her individual capacity, filed an answer to the amended complaint, and, in like capacity, filed a cross-complaint. In her answer, after formal denials of certain allegations of the said complaint, she admits the issuance of the policy on the life of her deceased husband by the said Insurance Company, as set forth in the amended complaint, but denies that said "policy of insurance is any part of said estate," and alleges that "said policy of insurance and all proceeds therefrom belong to Mary Estell Crocker, individually." The cross-complaint, with the exception of certain additional amendments, is, in all essential particulars, the same as those of the amended

complaint. The additional amendments referred to are: "That said William Franklin Crocker complied with all the requirements of the rules and by-laws of said Western States Life Insurance Company for the purpose of changing the beneficiary and substituting Mary Estell Crocker, his wife, for Warren Crocker, his brother; . . . that the Western States Life Insurance Company has not paid said policy of insurance," but has deposited the sum of $1,867.16 with the clerk of this court, etc.; "that said Mary Estell Crocker, this defendant, individually, claims to be the equitable beneficiary under said policy, and is the equitable beneficiary, and is entitled to payment of the said sum of $1,867.16; that the claim to payment of said sum of $1,867.16 to Mary Estell Crocker is made in good faith."

The defendant Warren Crocker, answering the amended complaint, admitted: 1. The corporate character of said Insurance Company; 2. The issuance on the twenty-first day of December, 1910, of the policy of insurance on the life of the deceased, as alleged in the amended complaint; 3. The death of William Franklin Crocker, at Camino, El Dorado County, on the twenty-fifth day of June, 1923; 4. The due appointment of Mary Estell Crocker, as executrix of her deceased husband's last will and testament; 5. That Mary Estell Crocker was the widow of the deceased; 6. That during his lifetime deceased made all required payments on said policy to said Insurance Company and complied with and performed all the terms and conditions of said contract of insurance, as alleged in the amended complaint; 7. That said Insurance Company, shortly after the death of William Franklin Crocker, was furnished with proof of the death of said Crocker, "and also," quoting from the amended complaint, "with a certified copy of the will of the deceased and of plaintiff's letters testamentary, and the plaintiff has otherwise performed all conditions of the said insurance contract on her part."

As to paragraph 6th of the amended complaint (first count) the answer of defendant Warren Crocker denies that deceased intended or tried to, or before his death did everything in his power to have the beneficiary in the insurance policy mentioned in said paragraph changed from Warren Crocker to Mary Estell Crocker. Defendant denies that William Franklin Crocker "at any time requested the

defendant to surrender said insurance policy, either for the purpose of having the beneficiary therein changed from Warren Crocker to Mary Estell Crocker or at all, and denies that he at any time refused to surrender said policy to said William Franklin Crocker. Defendant denies that he at any time stated or represented to William Franklin Crocker that said insurance policy had been lost or misplaced, or by any act, or in any way prevented a change of the beneficiary named therein by refusing to surrender the said policy, or otherwise, or at all.''

Interposing a special defense, the said Warren Crocker alleges that, ''for more than two years prior to his death, the deceased was suffering from a painful and fatal disease, which finally caused his death and that as a result of said disease, he steadily became feeble and infirm in body and mind, until during the months of April, May and June, 1923, he was so weak and suffering so much that he was easily influenced and controlled by, and yielded to the importunities of his wife, the plaintiff herein, without exercising any independent volition or control of his acts. That for more than two years prior to the death of her said husband, Mary Estell Crocker, plaintiff herein, continuously and persistently endeavored to prejudice him against his brother, Warren Crocker, defendant herein, and to persuade him to transfer all his property, including said insurance policy to her.'' Then follow averments particularizing the acts and conduct of Mary Estell Crocker tending to unduly influence deceased against his brother and to cause her to be substituted for his brother as beneficiary in said policy of insurance; that, finally, and for several months immediately preceding the death of her husband, the latter became feeble in mind and infirm of body to an extent that enabled the plaintiff to acquire an overpowering control and directing influence over the mind and will of the deceased to such a degree that, ''if he, the said William Franklin Crocker, during the months of April, May and June, 1923 (as alleged in the amended complaint), filed or made any application or request to the Western States Life Insurance Company of San Francisco to change the beneficiary in said policy No. 531, set forth in the complaint herein, from Warren Crocker to Mary Estell Crocker, the said William Franklin Crocker did so solely and only as a result of'' such dominat-

ing control "and undue influence" so practiced and exercised upon deceased by the plaintiff; that but for such undue influence so exercised under the circumstances indicated, the deceased would never at any time have made or filed any application or request for such or any change of beneficiary in said life insurance policy.

Answering the averments of the second count in the amended complaint, defendant Warren Crocker denies that the deceased was, at the time of his death, "the owner of all or any of the shares of the capital stock or dividends accruing thereon referred to in said second count or cause of action or had any claim to or interest in any of the certificates or dividends as, set forth in said second count of the amended complaint."

The defendant Warren Crocker filed an answer to the plaintiff's cross-complaint filed in her individual capacity, in which, as shown, she sets up an alleged right in her to the money due under the said policy of life insurance. This answer, as to the denials and allegations thereof, is in all substantial respects the same as the answer interposed by said Warren Crocker to plaintiff's amended complaint.

The cause was tried by the court, sitting without a jury. Findings were favorable to defendant Warren Crocker and judgment was accordingly rendered and entered adjudging defendant Warren Crocker to be the owner of and entitled to the possession of the money due under the said insurance policy and the shares of stock described in the amended complaint. Mary Estell Crocker, as a "substituted defendant," moved for a new trial, and the motion was denied. She, as executrix of the estate, etc., appeals from the judgment and also from the order denying her motion for a new trial.

The principal point made by the appellant is that the evidence does not support the findings. The respondent, however, on the threshold of his argument, urges the point that, so far as is concerned the first cause of action set up in the amended complaint, the basis of which, as shown, is the claim by appellant of ownership of the money due under the life insurance policy in controversy, the appeals here present no question or point which can competently be reviewed. The notice of appeal from the judgment is, in form, as follows:

"In the Superior Court of the State of California, in and for the County of El Dorado.

"No. 2974.

"Mary Estell Crocker, as Executrix of the Estate of William Franklin Crocker, Deceased,
                                                    Plaintiff,

vs.

Mary Estell Crocker and Warren Crocker, Substituted as Defendants Instead of Western States Life Insurance Company,
                                                    Defendants.

"Notice of Appeal from Judgment and Order Denying Motion for New Trial.

"To Mary Estell Crocker and Warren Crocker, Substituted Defendants Above Named, and to C. E. McLaughlin and Henry S. Lyons, Attorneys for Defendant, Warren Crocker, and to the Clerk of said Court:

"Please Take Notice, that the plaintiff in the above-entitled action hereby appeals to the District Court of Appeal of the Third Appellate District of the State of California, from the judgment entered on the 17th day of July, 1925, and from the whole of said judgment, and also from the order subsequently made and entered by said Superior Court denying the motion of plaintiff, Mary Estell Crocker, for a new trial. . . . "

The attempt by plaintiff to appeal from the order denying her motion for a new trial is futile, and the appeal or attempted appeal from said order must be dismissed. (Code Civ. Proc., sec. 963; *Hester* v. *McMullan*, 29 Cal. App. 664 [157 Pac. 521].)

It is plainly manifest from the phraseology of the notice of appeal from the judgment that there is afforded no escape from the conclusion that, with respect to the issue involved in the first cause of action set up in the complaint, the plaintiff has not presented here a reviewable record. While it is not expressly stated in the body of the notice of appeal in what capacity she appeals from the judgment— whether as executrix of the estate of her deceased husband or in her individual right upon the issue made by her

cross-complaint, and the answer thereto by defendant Warren Crocker—it is, nevertheless, to be noted that the language of the notice necessarily makes its caption embracing or stating the title of the action a part thereof. In other words, the language of the notice, "The *plaintiff in the above entitled action* hereby appeals," etc., refers to the action, the entitlement of which is, as above shown, "Mary Estell Crocker, as Executrix of the Estate, etc., plaintiff, vs. Mary Estell Crocker and Warren Crocker, substituted as defendants instead of Western States Life Insurance Company." By such reference, the title of the action is necessarily imported into and made an essential part of the notice itself, and, in effect, makes the notice read as follows: "Mary Estell Crocker, *as Executrix of the Estate of William Franklin Crocker, deceased,* hereby appeals . . . from the judgment entered on the 17th day of July, 1925, in favor of the defendant Warren Crocker and against said Mary Estell Crocker, as said Executrix," etc. And it is only a reasonable interpretation of the appeal taken by plaintiff, viewed by the light of the character of the several pleadings filed by her herein, that will lead to the conclusion that she intended to appeal from the judgment in her representative capacity and thus, on behalf of the estate, try out or have reviewed the points affecting the issue as to the ownership of the shares of stock described in the amended complaint. This conclusion is supported not only by the language of the notice itself, but also by the consideration that the notice of appeal was addressed to herself and Warren Crocker, "as substituted defendants above named" and to said Crocker's attorney, conceiving, as we may assume, that her rights on appeal upon the question whether she or Warren Crocker was the rightful owner of the money due under the insurance policy could and would be preserved and reviewed on her appeal from the order denying her motion for a new trial. But, whether intentionally or unintentionally, plaintiff omitted to take an appeal from the judgment in her individual capacity, the fact remains that, in the latter role she took no such appeal, with the inevitable result that the question whether the findings of the trial court that defendant Warren Crocker was the beneficiary of the deceased in the insurance policy mentioned, and entitled to

the money due under and by virtue of the terms of said policy, cannot be reviewed upon this record, since it cannot be, nor is it claimed, that the estate of William Franklin Crocker has any interest in said policy or the money payable thereon. Indeed, as has been made to appear herein, the plaintiff subscribed to the stipulation whereby the Insurance Company, expressly declaring that it was indebted under the policy in the sum due thereon either to plaintiff individually, or Warren Crocker, agreed to and did deposit the money due under said policy with the clerk of the court, to be disposed of in accord with any judgment, which, as between her personally and Warren Crocker, the court might render and cause to be entered in this action with respect thereto. Furthermore, in her answer, as a substituted defendant, to the amended complaint, she specifically denied that the estate, or the executrix thereof as such, had any interest in or right to said money. In her cross-complaint, as seen, she set up a claim to said money in her personal or individual right and an issue thereon was tendered by Warren Crocker's answer to said cross-complaint. Upon those pleadings, that issue was litigated and decided. It may be added that neither she, in her individual capacity, nor Warren Crocker, as substituted defendants in the action brought by her as executrix, appealed from the judgment, nor did she, as cross-complainant, take such appeal. From the foregoing considerations, it necessarily follows that the only issue that is open to review by this court on the appeal by plaintiff from the judgment involves the question whether there is or is not sufficient support in the evidence to uphold the finding that the shares of stock in the Western States Life Insurance Company are the property of the defendant. A brief reference herein to the evidence will readily disclose that the finding is sufficiently supported. There is no impropriety, though in stating that, notwithstanding that we are not required—in fact, as pointed out above, not legally authorized—to review the testimony addressed to the question of the ownership of the insurance money, we have, nevertheless, read the testimony bearing upon that question (and necessarily have we done so, because of the fact that the testimony upon both issues is more or less intermingled), and thus it is comforting for us to learn that, while the merits of the appeal, in so far

as is concerned the issue as to the insurance money, cannot be reviewed or considered because of the omission by plaintiff to observe and follow a rule in procedural law, the record contains sufficient evidence of facts and circumstances to sustain the finding responding to that issue.

As to whether the finding that the ownership of the stock in the Insurance Company rests in Warren Crocker, the evidence may thus be summarized: In the year 1896 the deceased and defendant (brothers, as has been shown) formed a copartnership under the firm name of "Crocker Bros.," for the purpose of engaging in the general merchandising business in Placerville, El Dorado County, and in that year did start such business in said town. At some time subsequent to the establishment of the Placerville store—the exact time, so far as we have been able to ascertain from the record, is not disclosed therein—a branch general merchandising store was opened by the firm in the town of Camino, in said county. The two stores were thereafter conducted by the Crocker Bros. simultaneously until the month of November, 1918, at which time a dissolution of the partnership between the brothers by mutual consent was effected. The corporate stock in question was, as seen, in the Western States Life Insurance Company, and consisted of 110 shares, evidenced by three certificates issued and entered upon the stock-book of said company in the name of "Crocker Bros., and were numbered and dated as follows: Certificate No. 3058, for 80 shares, dated August 27, 1910; certificate No. 3819, for 20 shares, dated August 31, 1910; certificate No. 5204, for 10 shares, dated August 17, 1914. Some time prior to the year 1916 (the exact time not revealed by the record) these shares of stock, then and at the time of the dissolution of the value of $800, were indorsed in blank and as so indorsed delivered to the El Dorado County Bank, at Placerville, by the Crocker Bros., as a pledge to secure the payment of a promissory note evidencing a loan from said bank to Crocker Bros., in the sum of $700. This loan was carried by the bank by annual renewals thereof until after the dissolution of the firm of Crocker Bros., and the stock during all that time remained in the possession of the bank as security for the note. Down to the time of the dissolution the note was signed by William Franklin Crocker and

Warren Crocker. The agreement of dissolution was not in writing. Warren Crocker, testifying in his own behalf, explained that the terms of the agreement to dissolve were (briefly given) that the deceased was to take and did take for his share of the partnership assets the Camino store and business, including the real property used in connection therewith, and that Warren Crocker was to and did receive as his share of the partnership assets the Placerville store and the real property connected therewith; that Warren Crocker was to and did assume the payment of the entire indebtedness due from the firm to certain creditors thereof; that Warren Crocker was to receive and William Franklin Crocker turned over to him as his (Warren's) separate property the stock of the insurance Company purchased by and issued to Crocker Bros. Warren Crocker testified that, at some time after the dissolution, the note to secure the payment of which the stock was pledged, matured or fell due and became payable, that he alone renewed and signed said note and that henceforward continued so to do upon each annual renewal thereof, and that he paid the interest thereon.

In the course of time subsequent to the dissolution, Warren Crocker disposed of the Placerville store and located at Fallon, in the state of Nevada. It appears that the Insurance Company had not been notified of the transfer of the stock by Crocker Bros. to Warren Crocker. The result was, of course, that such transfer was not entered in the stock book of the corporation. Warren Crocker failed to notify the Insurance Company of the transfer of his place of residence from Placerville to Fallon. The Insurance Company, therefore, continued to remit to and in the name of Crocker Bros., at Placerville, the dividends earned by and payable on the stock from time to time. Those dividends were received by the deceased, still residing at Camino, and by him appropriated to his own use. Having learned of this, Warren Crocker at Fallon addressed to his brother at Camino a letter in which he (Warren) stated, among other things: "When you was here (deceased had a short time before visited Warren at Fallon), I meant to speak to you about the Western States Life Insurance Company dividends that you have been collecting. It appears that the letters have been going to Placerville in the name

of Crocker Bros., and you have been taking them out and getting the checks. You have had the following checks," here specifying four different checks from the corporation and the amount of each, the sum total of the four checks being $140.25. The letter continued: "Now, I want you to send the balance by return mail, as this belongs to me and I need the money very bad." The deceased replied to said letter, in effect, admitting that the claim of Warren Crocker made in his letter in relation to the ownership of the stock was well founded. In the reply letter of deceased, he stated, among other things, that the assets of the firm, at the time of the dissolution, amounted in value to the sum of $8,000, "so," continued the letter, "I took the Camino store as my share and let you have the balance as your share." That Warren Crocker told the truth when he testified that, as a part of the consideration of the agreement of dissolution, he was to assume the payment of the existing indebtedness of the firm, is borne out, if not conclusively established, by the fact that deceased, after the dissolution, replying by letter to a letter addressed to him by a creditor of the partnership, demanding settlement of a claim held against Crocker Bros., by said creditor, declared that Warren Crocker had, upon the dissolution, assumed the payment of all the debts of Crocker Bros., and that to him alone the creditors of the firm must look for satisfaction of their claims against the partnership. And this further tends to confirm or support the testimony of Warren Crocker as to the terms of the agreement culminating in the dissolution of the partnership.

There is other testimony in the record which is more or less corroborative of the testimony of Warren Crocker relative to the terms of the agreement of dissolution, but enough of the evidence on the question of the ownership of the shares of stock has now been considered herein to show that the finding of the court upon that issue is abundantly supported by the evidence.

The point is made by the plaintiff that the purported transfer of the stock by Crocker Bros. to Warren Crocker was invalid because the stock was not formally assigned to the latter. The point is not maintainable. As between the parties themselves—that is, as between the transferor and transferee—a transfer of shares of stock of a corpora-

tion may be effected by any of the several modes whereby personal property of a different species may be transferred. (Civ. Code, secs. 324 and 1044; *Young* v. *New Pedrara Onyx Co.*, 48 Cal. App. 1, 14, 15 [192 Pac. 55].) Section 324 reads in part: "Whenever the capital stock of any corporation is divided into shares, and certificates therefor are issued, such shares of stock, except as herein provided, are personal property, and may be transferred by endorsement by signature of the proprietor . . . and delivery of the certificates; *but such transfer is not valid, except as to the parties thereto,* until the same is so entered upon the books of the corporation as to show the names of the parties by whom and to whom transferred, the number of the certificate, the number or denomination of the shares, and the date of the transfer."

In *Riverside Land Co.* v. *Jarvis,* 174 Cal. 316, 327 [163 Pac. 54], speaking of that part of section 324 of the Civil Code hereinabove quoted, the court, speaking through Mr. Justice Shaw (later chief justice), said: "It (referring to the provision of section 324 relating to corporations organized for the purpose of selling and distributing water for irrigation or domestic uses) does not "violate the provision of section 324 that shares of stock 'may be transferred by indorsement' and 'delivery of the certificate.' This language does not forbid the making of agreements to transfer, nor the making of contracts, good between the parties, that a certificate shall pass with the transfer of certain other property. Corporate stock would be transferable without such provision. (Civ. Code, sec. 1044.) The provision merely prescribes a mode by which the transfer may be made. It does not prohibit a transfer by other methods, nor declare that when made in another manner a transfer may not be enforced by the party entitled to the shares."

In *Young* v. *New Pedrara Onyx Co., supra,* referring to the provision quoted above from section 324, the court, through Presiding Justice Finlayson, said: "This section of the code is intended for the protection of the corporation and those who claim under the persons to whom the certificates were originally issued. The section clearly does not cover the whole subject of transfer. Corporate stock would be transferable without such provision as that contained in this particular code section. (Civ. Code, sec. 1044.)"

Here, as we have seen, the action to recover the stock is by the executrix of the estate of the deceased. The executrix stands, for the purpose of the administration of the affairs of the estate, in the shoes of the deceased, and, therefore, the action to recover the stock is, in legal contemplation, between the transferor and the transferee thereof. As "the interest of each member of a partnership extends to every portion of its property" (Civ. Code, sec. 2402), Warren Crocker at all times, in contemplation of law, not only held possession of the shares of stock, although such stock is a species of incorporeal property (*Young* v. *New Pedrara Onyx Co., supra*) and not capable of manual possession, but also had possession of the certificates which are, as stated in the case just named, "the paper representation of the incorporeal right." The uncontradicted testimony of Warren Crocker is that, in the negotiations looking to the dissolution, an agreement was reached for the "present transfer" of the stock to Warren Crocker, or so much thereof as the deceased, as a member of the partnership, was owner of, and, hence, the title to the whole of the shares of stock thereupon passed to Warren Crocker. (Civ. Code, sec. 1140.) The stock being for the purpose explained in the possession of the bank, in so far as such possession could be effected by the fact of the actual possession of the written evidence thereof in the form of certificates, indorsed in blank, what more could be done than was done effectually to accomplish a transfer of the stock to Warren Crocker and vest in him title thereto, except by the mode prescribed by section 324 of the Civil Code, a resort to which mode of transfer, as seen, is not, as between the parties themselves, indispensable to the validity of a transfer of corporate stock, cannot be conceived.

Our conclusion, as the above discussion indicates, is that the findings stand immune from just attack and that they, in turn, support the conclusions of law.

The attempted appeal from the order denying plaintiff's motion for a new trial is dismissed, and the judgment appealed from is affirmed.

Plummer, J., and Finch, P. J., concurred.