APPLICATION OF LAUN: FARMERS' MERCANTILE & SUPPLY
COMPANY, Appellant, vs. LAUN, Respondent.

*April 11—May 2, 1911.*

*Corporations: Transfers of stock: Restrictions, how far valid: Con-
tracts: Compelling transfer on books: Supreme court: Opinions,
how construed.*

1. Sec. 1751, Stats. (1898), providing that shares of corporate stock
   shall be deemed personal property, and providing how they may
   be transferred, does not prevent the shareholders and incorpo-
   rators from making any lawful contract among themselves or
   with the corporation, restricting in a degree, but not absolutely
   prohibiting, such transfers, or prevent the insertion of such a
   contract in the articles of organization; and such right by
   agreement to regulate and restrict transfers is recognized in
   secs. 1748 and 1772.

2. A distinction must be observed between restrictions thus created
   by contract and those attempted to be imposed by a by-law
   upon an unwilling minority or upon those who may assert that
   the by-law is beyond the charter power.

3. Where the stock subscription, the articles of incorporation, and
   the stock certificates on their face contained provisions to the
   effect that shares were not transferable except in pursuance
   of a vote of two thirds of all outstanding shares; that such ma-
   jority of shareholders might either consent to the transfer or
   themselves take up the shares sought to be transferred by pay-
   ing for the same at par; and that if they did neither the
   holder might sell and transfer his shares as usual,—the court
   will not compel a transfer upon the company's books of any
   shares which the holder attempts to assign in violation of such
   contract.

4. General language in *Edgerton T. M. Co. v. Croft,* 69 Wis. 256, *In
   re Klaus,* 67 Wis. 401, and like cases, restrained and modified.

5. Language found in judicial opinions must be construed with ref-
   erence to and be limited by the subject under discussion.

APPEAL from an order of the circuit court for Sheboygan
county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

The appeal is from an order directing the transfer on the
books of the corporation of certain shares of its capital stock
pursuant to sec. 1752, Stats. (1898).

*Simon Gillen,* for the appellant, cited, among other authorities, 1 Cook, Stock (3d ed.) § 408; 2 Cook, Corp. (4th ed.) § 621*a;* 26 Am. & Eng. Ency. of Law (2d ed.) 855; *Boswell v. Buhl,* 213 Pa. St. 450; *Boggs v. Boggs & Buhl,* 217 Pa. St. 10, 66 Atl. 105; *Vansands v. Middlesex Co. Bank,* 26 Conn. 144; *New England T. Co. v. Abbott,* 162 Mass. 148, 27 L. R. A. 271, and note; *Barrett v. King,* 181 Mass. 476; *Lindsay v. Arlington C. Asso.* 186 Mass. 371; *Silversmiths Co. v. Reed & Barton Corp.* 199 Mass. 371; *Stafford v. Produce Exch. B. Co.* 61 Ohio St. 160, 76 Am. St. Rep. 371; *Dempster Mfg. Co. v. Downs,* 126 Iowa, 80; *Mechanics' Bank v. Merchants' Bank,* 45 Mo. 513, 100 Am. Dec. 388; *Bronson E. Co. v. Rheubottom,* 122 Mich. 608; *Pronick v. Spirits D. Co.* 58 N. J. Eq. 97; *Bank of Holly Springs v. Pinson,* 58 Miss. 421.

*M. C. Mead,* for the respondent.

TIMLIN, J.   The contract of subscription for shares, the articles of incorporation, the by-laws, and the stock certificates on their face, contained a provision substantially to the effect that shares were not transferable except in pursuance of a vote of two thirds of all the outstanding shares, and this majority of shareholders might either consent to the transfer or themselves take up the shares sought to be transferred by paying for the same at par.   If they did neither the holder was at liberty to sell and transfer his shares as usual.   The respondent sought to compel a transfer of shares in disregard of these provisions, and the court below upheld his claim holding these provisions void.

The object and purpose of such regulations restricting in a degree but not prohibiting the transfer of shares are familiar.   It is sometimes necessary and often desirable that a corporation protect itself against the acquisition of shares of its stock by rivals in business or other disturbers who might purchase shares merely for the purpose of acquiring information which might thereafter be used against the interests of the

company. Similar restrictions upon the transfer of shares
are generally recognized and held valid where they form part
of the charter or articles of organization of the corporation
and are matters of contract between the shareholders. The
cases will be found in 2 Cook, Corp. (6th ed.) § 622c *et seq.*
*New England T. Co. v. Abbott,* 162 Mass. 148, 38 N. E. 432,
27 L. R. A. 271; 26 Am. & Eng. Ency. of Law (2d ed.) 855.
A distinction must be observed between an agreement abso-
lutely restrictive of sale or transfer and one merely imposing
conditions, such as first giving a refusal to the other share-
holders, and also between those conditions when created by
contract between the shareholders and authorized by the ar-
ticles and when attempted to be imposed by a by-law upon an
unwilling minority or upon those who may assert that the
by-law is beyond the charter power. The power of natural
persons to make all contracts not prohibited by law is in its
scope far beyond the charter or corporate power to enact by-
laws. Most or all of this will be freely conceded, but it is
argued that statutes in this state prevent the application to
stock corporations of Wisconsin of these rules of law existing
elsewhere. General language in *Edgerton T. Mfg. Co. v.
Croft,* 69 Wis. 256, 34 N. W. 143; *In re Klaus,* 67 Wis. 401,
29 N. W. 582; and *Canterbury v. N. W. Mut. L. Ins. Co.* 124
Wis. 169, 102 N. W. 1096, is relied upon. But the first was
an action upon a stock subscription contract wherein the de-
fense was that the corporation was not lawfully organized be-
cause a certain provision thought to be required by statute was
omitted from its articles of incorporation; the second, as
treated by this court, involved the validity of a by-law creating
an absolute prohibition upon the transfer of shares; the third
was an action upon several policies of insurance, and the court
therein merely alludes *arguendo* to the rulings holding void a
by-law restricting the transfer of shares of corporate stock.
The rule that language found in judicial opinions must be

·construed with reference to and limited by the subject under discussion is always with us, lest we come to regard words more than we do real things. Sec. 1751, Stats. (1898), is a ·very common type of statute. The Massachusetts statute is as follows:

"The delivery of a stock certificate of a corporation to a ·*bona fide* purchaser or pledgee, for value, together with a written transfer of the same, . . . · signed by the owner of the certificate, shall be a sufficient delivery to transfer the title .as against all parties; but no such transfer shall affect the right of the corporation to pay any dividend due upon the stock, or to treat the holder of record as the holder in fact, until such transfer is recorded upon the books of the corporation, or a new certificate is issued to the person to whom it has been so transferred." Act of 1884, ch. 229. See, also, R. S. Me. ch. 47, secs. 34, 35, Act of March 26, 1897.

See, also, Annotated Corporation Laws of all the states by ·Cumming, Gilbert, and Woodward, where, under alphabetical arrangement of states, the statutes of each state relative to the transfer of shares of stock may be found referred to. These vary in detail but have a marked general resemblance. We do not find that any court has given to statutes regulating the mode of transfer of shares the broad scope suggested by the *dicta* in *Edgerton T. Mfg. Co. v. Croft, supra,* and other like ·cases. We feel at liberty to re-examine our statute with reference to the questions presented upon this appeal.

The statutes now in force relating to the organization of corporations begin with a declaration stating what powers the corporation shall possess, "when no other provision is specially made by law or by its articles of organization." Sec. 1748, Stats. (1898). "In stock corporations, persons holding stock, according to the regulations of the corporations, and they only, shall be members." Subd. 6, sec. 1772. These provisions recognize the right of the shareholders and incorporators to make and agree to provisions on this subject not ·

otherwise forbidden by law. Sec. 1751, Stats. (1898), does not impair the right of contract (which is a more comprehensive right and includes the *jus disponendi*) so as to prevent shareholders in their subscription agreement from making any lawful contract with the corporation or among themselves. Neither does this section forbid such lawful contracts to appear in the articles of organization, nor does it override in this respect the express provisions of secs. 1748 and 1772 above quoted. "The capital stock of every corporation divided into shares shall be deemed personal property." This cannot have greater effect in the instant case than to subject such shares to the rules of law relative to the transfer of personal property. These rules forbid and make void absolute restrictions upon alienation or transfer, but they do not invalidate contractual provisions whereby one in acquiring title agrees that another or others shall have the refusal of such property in case he desires to sell, or the right to buy it from him at a price then fixed, and that in case they fail to exercise this option he may then sell to whomsoever he pleases. "When certificates thereof are issued such shares may be transferred by indorsement of the owner, his attorney or legal representative and delivery of the certificate." Sec. 1751. These words are permissive in form and substance, because it is well settled that shares of stock may be, as between the parties to the transaction, sold and transferred without this formality, at least in equity. As against a mere by-law of the corporation this paramount statute, it is true, controls not only the form but the legal effect of indorsement by the owner and delivery of the certificate, but decisions upon this point do not include the question here presented.

"The delivery of a stock certificate of a corporation to a *bona fide* purchaser or pledgee for value, together with a written transfer of the same signed by the owner of the certificate, his attorney or legal representative shall be a sufficient delivery to transfer the title as against all persons, but

no such transfer shall affect the right of the corporation to
pay any dividend due upon the stock or to treat the holder of
record as the holder in fact until, such transfer is recorded
upon the books of the corporation or a new certificate is is-
sued to the person to whom it has been so transferred." Sec.
1751, Stats. (1898).

So far as the corporation is concerned it may refuse to
recognize the transferee and treat the holder of record as the
holder in fact until such transfer is recorded, even though
such transferee have delivered to him a stock certificate with
a written transfer of the same signed by the owner of the
certificate and be a *bona fide* purchaser for value. But this
transferee may apply to the proper officer of the corporation
for a transfer to him on the stock books. Sec. 1752. If it
is made to appear *prima facie* that it is the duty of the cor-
porate officer to make the transfer, the court shall require him
to show cause why he should not transfer the stock, and un-
less he show cause to the satisfaction of the court to the con-
trary the court shall order such transfer. Id. Here the cause
shown is that the transferee in question is not, according to
the subscription agreement and the articles of incorporation,
entitled to become a member of the corporation or to hold
stock therein, and the transfer to him is invalid because
the transferee has not been qualified by the approval of
two thirds of the shareholders, and the prior right of these
shareholders to purchase the stock at par appears upon the
certificate itself as outstanding and unextinguished. The
secretary would be justified in bringing such matters to the
attention of the court. Such prior claim of another may be
good cause against the demand of the respondent. The court
will not aid the assignor of respondent acting with the re-
spondent to commit a breach of his contract to sell the stock to
his fellow shareholders at par before transferring it to any
one else. *Martens v. Reilly,* 109 Wis. 464, 84 N. W. 840.
General language in *Edgerton T. Mfg. Co. v. Croft,* 69 Wis.

256, 34 N. W. 143, and other like cases must be restrained and modified to conform to this decision.

*By the Court.*—The order of the circuit court is reversed, and the cause remanded with directions to dismiss the application.

KERWIN, J., dissents.