No power or authority can be conferred on corporation by its charter which is not provided for by statute under which corporation is created.
Same rules governing construction of statutes and contracts are used in construing charters of corporate powers and privileges.
Independent of valid charter or statutory provisions, corporate by-law which unreasonably restrains power of stockholder to transfer stock is invalid as against public policy.
Reasonable restrictions on transfer of corporate stock as are necessary and convenient to attainment of objects for which company was incorporated are valid (Revised Code 1915, §§ 1916, 1917, 1930).
Under Revised Code 1915, §§ 1916, 1917, 1930, corporation has right to make by-laws for the management and government of its affairs and to exercise all the powers and privileges expressly given in its certificate of incorporation which are necessary or convenient to attainment of its objects therein set forth, and also has the privilege of regulating transfer of shares of stock.
Charter provision entitling corporation engaged in loaning small amounts and acting as agent in procuring loans to purchase its stock at appraised *Page 344 
value before safe to strangers held yalid and within corporate powers (Revised Code 1915, §§ 1916, 1917, 1930, 1933).
Corporate charter is contract between corporation and State.
Corporate charter is contract between corporation and its stockholders.
Charter provision requiring stockholders to given corporation opportunity to exercise its statutory right to purchase stock before selling to strangers held binding as contract (RevisedCode 1915, § 1933).
One of essential incidents to ownership of property is right to dispose of it in manner provided by law.
Charter provision entitling corporation to purchase its stock before sale to strangers held not invalid as restraint on alienation of property.
Charter provision entitling corporation to purchase its stock as appraised value before sale to strangers held not void in excluding good will from appraised value.
"Good will" of corporation is fleeting intangible something which depends largely on personality and ability of officers and employees of corporation.
Charter provision entitling corporation to purchase its stock at appraised value before sale to strangers held not invalid in requiring majority of appraisers to be drawn from stockholders.
Stockholder's vendee held bound by charter provision entitling corporation to purchase stock before sale to strangers.
Charter provision entitling corporation to purchase its stock before sale to strangers held not objectionable as attempting to obtain for corporation advantages of partnership.
STATEMENT OF THE CASE. The complaint below filed a bill in the Court of Chancery of this State, against the defendant below, a Delaware corporation, praying that it be decreed to transfer to him one hundred (100) shares of its Class B common *Page 345 
stock registered in the name of Echo R. Davis, the certificate for which had been indorsed to him and tendered for cancellation.
The material facts alleged in the bill were admitted by the answer of the defendant below, but its refusal to transfer the stock in question was justified by the provisions of its certificate of incorporation as amended, and its by-laws. Those portions of said certificate of incorporation which were relied upon were as follows:
Ninth. (a) Any holder of Class B. common stock if desirous of selling or transferring all or any of his shares of Class B. common stock, and the executor or administrator of any deceased holder of Class B. common stock if desirous of selling or transferring all or any of such shares belonging to the estate of such deceased and the purchaser of any share or shares of Class B. common stock sold on execution or at any judicial sale if desirous of selling or transferring any such share or shares and the pledgee of any share or shares of Class B. common stock before bringing any suit, action or proceeding or doing any act to foreclose his pledge shall first deliver to the president or treasurer of the corporation written notice of such desire to sell or transfer, or of intention to foreclose, designating the number of such shares to be sold, transferred or foreclosed, as the case may be, and the number of the certificate or certificates therefore and the name and residence address of a person who is then a holder of Class B. common stock of the corporation who shall act as an appraiser.
(b) The president and treasurer or the board of directors of the corporation shall within ten days after delivery of such notice select another holder of Class B. common stock as an appraiser and give written notice of his name and residence address to the person desirous of making such sale, transfer or foreclosure and to the appraiser appointed by him; the two appraisers so selected shall within twenty days after the giving of said last named notice select a third appraiser who shall be experienced in the business of loaning money or in banking and who shall reside or be engaged in business in the city in which the general administrative office of the corporation is located; *Page 346 
and they shall at once notify both parties in writing of the name and residence address of said third appraiser.
(c) If the two appraisers so selected shall not within said twenty days select such third appraiser, either party may apply upon five days' written notice to the other, to any judge of any court of general jurisdiction in the said city for the appointment of such third appraiser.
(d) The three appraisers so selected shall within thirty days after the selection of the third appraiser appraise such share or shares proposed to be sold, transferred or foreclosed and the majority of them shall determine their value as at the time of such appraisal and shall forthwith give written notice of their determination to both parties. In determining the value good will shall not be considered.
(e) Said appraisal shall take place at the said general administrative office of the corporation and the appraisers shall notify both parties in writing of the time when the appraisal will be made; each party shall pay the expenses and fees of the appraiser selected by him or it and one-half of the expenses and fees of the third appraiser.
(f) The board of directors shall thereupon have the option, for twenty days after receipt by the corporation of written notice of the determination of the appraisers, of purchasing said share or shares for the corporation at the appraised value. Payment for any such share or shares may be made by the board by share or shares for the corporation at the appraised value. Payment for any such share or shares may be made by the board by depositing the said appraised value to the credit of such shareholder, executor, administrator, grantee, assignee or pledgee, as the case may be, in any National Bank in Chicago or New York, to be paid to such person by said bank upon the surrender of the certificate or certificates for said share or shares of Class B. common stock properly endorsed; the board shall give written notice of such deposit to the seller.
(g) Every holder of Class B. common stock who, being a director, officer, employee or agent of the corporation, shall whether with or without his fault cease to be such director, officer, employee or agent and every executor or administrator *Page 347 
of any deceased holder of Class B. common stock and every purchaser of any share or shares of Class B. common stock sold on execution or at any judicial sale shall immediately offer all shares of Class B. common stock by them respectively owned or held, for appraisal and purchase by the corporation as above set forth, whenever requested by the board of directors so to do and no dividend shall be paid or allowed upon any such share or shares, after failure to comply with such request.
(h) Said board shall not be obliged to purchase any share or shares of Class B. common stock at the appraised value aforesaid unless it shall think fit; but if it shall not within said last named twenty days purchase and pay for the said share or shares, such shareholder, executor, administrator, grantee, assignee, or pledgee shall be at liberty to sell said share or shares to any person whomsoever.
(i) The board of directors and the person desiring to sell or foreclose may waive the foregoing requirements as to appraisal and may mutually agree upon the value of any share or shares of Class B. common stock to be sold.
(j) Failure of the board to purchase any share or shares of Class B. common stock so appraised and the sale or transfer thereof to any other person, shall not, as to any future sale or transfer of said share or shares, or of any share or shares issued in lieu thereof, discharge any such share or shares of Class B. common stock from any of the restrictions herein contained; it being the intent that all restrictions hereby imposed upon the sale or transfer of shares of Class B. common stock shall apply to all shares of Class B. common stock, whensoever, howsoever or by whomsoever acquired, in the hands of all holders or owners, whether original shareholders or subsequent purchasers or transferees and whether acquired through the voluntary or involuntary act of a shareholder or by operation of law and whether a part of the first authorized issue or of any subsequent or increased issue.
That portion of the by-laws relied upon, being section two of article six, is identical with the above quotation from the certificate of incorporation. *Page 348 
These provisions were also printed on the back of the stock certificate and referred to on the face thereof.
For the opinion in the Court of Chancery, see ante p. 1.
RICHARDS, J., delivering the opinion of the court:
The general proposition that no power or authority can be conferred upon a corporation by its charter, which was not provided by the statute under which it was created is not disputed.
All corporations created in this State and powers thereby granted must be sanctioned by an Act of the Legislature.Constitution, Article 9.
Corporate existence and powers were well defined by Chief Justice Marshall in the celebrated Dartmouth College Case, when he said, "A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence. These are such as are supposed best calculated to effect the object for which it was created." Dartmouth College v. Woodward, 4 Wheat, 518, 636,4 L. Ed. 629.
The same rules which govern the construction of statutes, contracts and other written instruments, are made use of in construing the provisions and determining the meaning of charters and grants of corporate powers and privileges. Hartford BridgeCo. v. Union Ferry Co., 29 Conn. 210; Dempster Mfg. Co. v.Downs, 126 Iowa, 80, 101 N.W. 735, 106 Am. St. Rep. 340, 3Ann. Cas. 187; State v. Noyes, 47 Me. 189; Casper v.Kalt-Zimmers Mfg. Co., 159 Wis. 517, 149 N.W. 754,150 N.W. 1101.
An examination of the General Corporation Law of this State, being Chapter 65 of the Revised Code of 1915, as amended, discloses that the following powers are expressly granted to every corporation organized under its provisions.
Section 2, par. 6: "To make by-laws not inconsistent with the Constitution or laws of the United States or of this State, fixing and altering the number of its directors, for the management of its property, the regulation and government of its affairs and for the certification and transfer of its stock. * * *" *Page 349 Section 3: "In addition to the powers enurnerated in the second section of this Chapter, every corporation, its officers, directors and stockholders, shall possess and exercise all the powers and privileges contained in this Chapter, and the powers expressly given in its charter or in its certificate under which it was incorporated, so far as the same are necessary or convenient to the attainment of the objects set forth in such charter or certificate of incorporation."
Section 16: "The shares of stock in every corporation shall be deemed personal property and transferable on the books of the corporation in such manner and under such regulations as the By-laws provide."
Did the Household Finance Corporation, under the above mentioned provisions of the General Corporation Law, have the authority to place such restrictions and regulations upon the alienation of its Class B. common stock, as are found in its charter and by-laws?
Was it justified in refusing to transfer the stock in question?
Section 2 gives it the right to make by-laws for the management and government of its affairs, provided such by-laws do not conflict with the constitution or laws of the United States or of this State; Section 3 confers upon it the additional right to possess and exercise all the powers and privileges contained and expressly given in its certificate of incorporation which are necessary or convenient to the attainment of the objects therein set forth; and Section 16 provides that its shares shall be personal property and grants it the privilege of regulating their transfer.
Article 9 of its charter sets forth fully the restrictions and limitations placed upon the selling or transferring of its Class B. common stock and they are also contained in the by-laws which were adopted thereafter. But does it appear that these restrictions and limitations are necessary or convenient to the attainment of the objects set forth in the charter? The object of the business as outlined by the charter, is to loan its own money, to act as agent in procuring money for loans, to endorse, guarantee the payment of, buy, sell, and otherwise deal in notes, open accounts and obligations of like character. In enlarging upon the nature of the business, the answer sets out that it consists *Page 350 
of making small loans not exceeding three hundred dollars, averaging from one hundred dollars to one hundred and fifty dollars, such loans being made largely upon the reputation of the borrower without security, with branch offices in various cities throughout the country. A business of this kind is certainly a very precarious one and one which requires the employment of trained, competent and honest persons who can always be depended upon to protect the company's interests. Such persons can best be secured by providing them with an interest in the business and in order to be able to do this the company must have the privilege of purchasing its own stock in preference to others. Certainly the provision that the company should be notified of the stockholder's desire to sell his stock and have a prior right to purchase the same is necessary to the attainment of the objects set forth in the charter and the success of the company would be in danger without this right to purchase the stock. It should not be forgotten that the restrictions contained in the charter and by-laws under consideration do not restrict the sale of the stock of Household Finance Corporation to its board of directors, but simply provide that notice of the desire to sell should be given the directors and they should have the refusal thereof. It cannot be denied that as a general proposition, and independent of valid charter or statutory provisions, a corporate by-law which unreasonably restrains the power of a stockholder to transfer his stock, has been held invalid as against public policy. McNulta v. Corn Belt Bank,164 Ill. 427, 45 N.E. 954, 56 Am. St. Rep. 203; Victor G.Bloede Co. v. Bloede, 84 Md. 129, 34 A. 1127,33 L.R.A. 107, 57 Am. St. Rep. 373; Bank of Atchison County v. Durfee,118 Mo. 431, 24 S.W. 133, 40 Am. St. Rep. 396; Miller v.Farmers' Milling, etc., Co., 78 Neb. 441, 110 N.W. 995,126 Am. St. Rep. 606; Ireland v. Globe Milling, etc., Co.,19 R.I. 180, 32 A. 921, 29 L.R.A. 429, 61 Am. St. Rep. 756.
There seems to be a conflict of decisions as to the validity of a by-law of that character, requiring a stockholder before selling his stock, to give the corporation or other stockholders an opportunity to purchase it. The cases of Victor G. Bloede Co.v. Bloeds, and Ireland v. Globe Milling Reduction Co., above cited, hold that such a by-law is an unreasonable restraint upon the power to alienate the stock. *Page 351 
But the cases of New England Trust Company v. Abbott,162 Mass, 148, 38 N.E. 432, 27 L.R.A. 271; and Nicholson v.Franklin Brewing Co., 82 Ohio St. 94, 91 N.E. 991, 995,137 Am. St. Rep. 764, 19 Am. Cas. 699; Baumohl v. Goldstein,95 N.J. Eq. 597, 124 A. 118; Garrett v. Philadelphia Lawn MowerCo., 39 Pa. Super. Ct. 78, sustain by-laws containing such provisions though statutes were involved in some of them. InNicholson v. Franklin Brewing Company, supra, the company was incorporated under the laws of this State. One of its by-laws required a stockholder who desired to sell his stock to notify the secretary of the company in writing, stating the amount he desired to sell and the market value thereof, after which the company should have an option on it for thirty days. In holding this by-law valid, the Ohio court referred to Section 3 of theGeneral Corporation Law, and used the following language: "The by-law here called in question contains no suggestion of a purpose to prevent the alienation of stock nor to restrict it beyond reasons suggested by a consideration of the welfare of the corporation and the express provisions of the statute. It interposes no permanent impediment to the transfer, providing only for an option in the directors for 30 days as a reasonable opportunity to them to dispose of stock to persons deemed desirable as holders." In the cases of Casper v. Kalt-ZimmersMfg. Co. 159 Wis. 517, 149 N.W. 754, 756, 150 N.W. 1101;Sweetland v. Quidnick Co., 11 R.I. 328; and Farmers', etc.,Co. v. Loun, 146 Wis. 252, 131 N.W. 366, there were charter provisions requiring a shareholder desiring to sell his stock first to offer the same to the board of directors or remaining shareholders and giving them an option thereon for a certain time.
The following language was used by the court in the case ofCasper v. Kalt-Zimmers Mfg. Co., above cited: "The personal element is as important in the make-up and management of a corporation as it is in almost every other undertaking. Restrictions, therefore, reasonably protecting incorporators or stockholders in their interests by permitting them first to purchase stock offered for sale, should be held lawful as promotive of good management and sound business enterprise."
 The restrictions placed upon the transfer of stock in the *Page 352 
last three cases cited are very similar to the restrictions in the case now before the court, and the reasons there expressed for holding them valid apply with equal force to this case. We think that reasonable restrictions upon the transfer of stock of a corporation, such as are necessary and convenient to the attainment of the objects for which the company was incorporated, as the restrictions in this case appear to be, are valid and are within the powers delegated to corporations by our GeneralCorporation Law.
In fact, practically the same general principle was involved inMcDowell v. Bank of Wilmington Brandywine, 1 Har. 27.
In that case though the corporate charter was granted by legislative act it authorized the bank to "establish such other laws, regulations and ordinances as to them shall seem necessary and convenient for the government of said corporation."
Under this provision a by-law prohibiting the transfer of any stock owned by a person who was indebted to the bank was held valid.
We are not compelled, however, to rest the decision of this case on that point alone as there is another reason why the restrictions placed upon the transfer of the stock of this corporation should be upheld, and one which is supported by the weight of authority. We refer to the contractual relation existing between the corporation and its stockholders. Ever since the decision in the Dartmouth College Case above referred to, it has been generally recognized in this country that the charter of a corporation is a contract both between the corporation and the state and the corporation and its stockholders. It is not necessary to cite authorities to support this proposition.
As was pointed out by the Chancellor, Section 19 of ourGeneral Corporation Law confers upon all corporations created under it the right to purchase, hold, sell and transfer shares of their own capital stock. The ninth article of the charter sets forth the provisions of a contract by which every person who becomes a stockholder binds himself to give the corporation an opportunity to purchase his stock in pursuance of its statutory power. The provisions with respect to notice of his desire to sell, naming appraisers, disregarding good will and giving the board of directors an option to purchase are all terms of the contract *Page 353 
equally binding upon the corporation and the stockholder. Peters v. United States Mortgage Co., 13 Del.Ch. 11, 114 A. 598; Morris v. American Public Utilities Co., 14 Del. Ch. 136, 122 A. 696; Pronick v. Spirits DistributingCo., 58 N.J. Eq. 97, 42 A. 586; Prindiville v. Johnson Higgins, 92 N.J.E. 315, 113 A. 915; New England TrustCompany v. Abbott, 162 Mass. 148, 38 N.E. 432,27 L.R.A. 271; Nicholson v. Franklin Brewing, Co., 82 Ohio St. 94,91 N.E. 991, 137 Am. St. Rep. 764, 19 Ann; Cas. 699; Farmers'M. S. Co. v. Laun, 146 Wis. 252, 131 N.W. 366; Garrett v.Phila Lawn Mower Co., 39 Pa. Super. Ct. 78.
It has been strongly urged on behalf of the appellant, that the conditions of the charter and by-laws in question constitute a restraint upon the alienation of property and in consequence thereof are void as against public policy. Our attention is called to the fact that Section 16 of the General CorporationLaw, makes stock in every corporation personal property.
In this connection it is contended that one of the primary characteristics of personal property is the right to dispose of it, and that this right still exists regardless of the limitations which may be placed upon it. We agree with the contention that one of the essential incidents to the ownership of property is the right to dispose of it in the manner provided by law. This right has always been zealously guarded by the courts, and there has been a tendency for years to remove many of the old restraints upon alienation. This tendency has not been so strong in the development of the law of corporations, the voting trust being an example. In this case, however, the restrictions are not absolute and do not prevent the ultimate alienation of the stock. They simply regulate the transfer by giving the board of directors an option on the stock for a specified time. The cases of Wynehamer v. People, 13 N.Y. 378, and Dixon v.People, 168 Ill. 179, 48 N.E. 108, 39 L.R.A. 116, relied upon by appellant in support of his position, involve the construction of criminal statutes and are not the best authority in a case of this nature.
In the cases of Straus v. Victor Talking Machine Co.,243 U.S. 490, 37 S. Ct. 412, 61 L. Ed. 866, L.R.A. 1917A, 1196, Ann. Cas. 1918A, 955, and Dr. Miles Medicine Co. v. Park Sons Co., 220 U.S. 373, 31 S. Ct. 376, 55 L. Ed. 502, which were also relied *Page 354 
upon, the conditions practically amounted to an absolute restriction of the right to sell the property. In the other cases cited in support of this point the regulations were more stringent than those now being considered. Another reason which has been presented and argued with much force, why the conditions placed on the sale of the stock should be held void, is that good will cannot be considered in appraising the value thereof.
It is argued that this term embraces the great number of elements which are so necessary to the success of any undertaking, and of which no record is kept.
The fact that good will is essential in almost every business enterprise cannot be denied. But what is it, and how can its value be accurately estimated? Counsel has referred to the financial statements of some of the strongest corporations of the country in order to show the great value which they place upon good will. It is not surprising that they do, for without it they might soon find themselves in financial difficulty. A man may start an enterprise and by his pleasing personality, close application, dependability and honesty build up an enormous business in which the value of the good will would be very large; while one to whom he might sell the same business, by his disagreeable manner, carelessness, unreliability, and questionable honesty might get it in such a condition that the good will would have no value whatever. Consequently good will is a fleeting, intangible something which depends largely upon the individual or the personality and ability of the officers and employees of the corporation. The cases of Trego v. Hunt, [1896] App. Cas. 7; Didlake v. Roden Grocery Co.,160 Ala. 484, 49 So. 384, 22 L.R.A. (N.S.) 907, 18 Ann. Cas. 430;Washburn v. National Wall-Paper Company (C.C.A.) 81 F. 17; andBorden's Estate, 95 Misc. Rep. 443, 159 N.Y.S. 346, which were cited to show the value of good will are not in conflict with the view above expressed.
The additional objection is made that a majority of the appraisers must be appointed from the stockholders, who are not impartial as they are interested in buying the stock as cheaply as possible. It might be argued with equal force that for their own protection they would be interested in keeping the price of the stock as high as possible. Certainly the third appraiser, who *Page 355 
is not a stockholder, would be in a position to demand that a fair value be placed upon it.
These terms were a part of the contracts entered into by appellant's vendor when he purchased the stock and certainly appellant can be in no better position than he was.
The further contention is made that by placing these restrictions in its charter and by-laws, Household Finance Corporation was attempting to obtain for a corporation the advantages of a partnership. We agree with the Chancellor that this objection is without merit.
If the methods adopted by a corporation for conducting its business are similar to the methods usually followed by a partnership, there can be no legal objection to them provided they do not infringe the laws which govern it.
The terms and conditions of the contract under which the stock was purchased were not only contained in the charter and by-laws, but printed on the back of the stock certificate a reference thereto being made on its face. The appellant had every opportunity to learn what the conditions were.
There being no evidence of any fraud at the time of the purchase, we are convinced that the conditions of the contract are binding upon the appellant.
 The decree of the court below is, therefore, affirmed. *Page 356