*700 OPINION.
Seawell :
The respondent determined that the petitioner in 1927 received as a dividend distribution from the Kimberly-Clark Co. 419.866 shares of Kotex Co. stock which at the time had a fair market value of $138.81 per share, or an aggregate value of $58,281.60.
In our opinion, and we so hold, the correctness of the respondent’s determination as to the fair market value of the Kotex Co. stock at the date (January 3, 1927) he asserts distribution of same was made is sustained by the record. However, in behalf of the petitioner, it is very earnestly insisted that there was in fact mo distribution of Kotex Co. stock as contended by respondent and that petitioner did not actually receive any Kotex Co. stock.
Numerous authorities are cited and extended arguments made by counsel on both sides in support of their respective positions. While carefully considering them, it is not necessary to review and discuss them fully nor in detail, as certain principles enunciated in a few cases are, in our opinion, controlling and determinative of the issues involved. We have endeavored to make a full and .fair statement of the material facts shown by the record and necessary to be considered in determining the issues.
The respondent’s determination of deficiency is based on the theory that the declaration by resolution of the board of directors of the Kimberly-Clark Co. on January 3, 1927, of a dividend of 44,749 shares of no par capital stock of the Kotex Co. for distribution pro rata, in proportion to the stockholdings in the Kimberly-Clark Co. and as set forth in the resolution, and the action thereafter taken, constituted a taxable dividend within the meaning of section 201 (a) and (b).of the Bevenue Act of 1926. The petitioner denies there was any dividend distribution of said stock, asserting that under the circumstances there could be none, and insists that what the stockholders o,f the Kimberly-Clark Co. were to receive and did receive in 1927 as a distribution was not Kotex Co. stock, but International Cellucotton Products Co. stock for which the Kotex Co. stock had been exchanged, and that such action brought the transaction within and governed by section 203 (c) of the act, under which no gain is recognized.
That the Kimberly-Clark Co. on January 3, 1927, did own 44,749 shares of Kotex Co. no par stock and had a surplus, consisting in *701 part of those shares, sufficient in amount for a dividend distribution as recited in the aforesaid resolution, is not disputed. So far as the ¡record shows there was no legal obstacle to prevent the Kimberly-Clark Co. from declaring and distributing as a dividend to its stockholders the 44,749 shares of Kotex Co. stock, as respondent contends in effect was done, unless, as insisted for the petitioner, such a distribution could not be made under the then existing circumstances on account of the aforesaid two prior agreements of November 1, 1926, and December 1,1926.
In order to bring the transaction within and satisfy the requirements of section 203 (c), supra, as insisted by the petitioner, the distribution would have to be made “ in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization ”, of “ stock or securities in such corporation or in another corporation a party to the reorganization.” The record does not indicate that any reorganization was ever contemplated by or occurred with respect to the Kimberly-Clark Co., either within the meaning of “ reorganization ” as defined in section 203 (h) (1) of the Kevenue Act of 1926 or within any accepted or recognized meaning of that term. A reorganization, in the statutory sense, did actually occur in 1927 in the case of the Kotex Co., but at the time of such reorganization the Kimberly-Clark Co. had, in our opinion, ceased to be one of its shareholders, the stock of the Kotex Co. formerly owned by the Kimberly-Clark Co. being then owned by its shareholders, who exchanged it for stock of the new corporation, the International Cellucotton Products Co.
The term “ a party to a reorganization ” as defined by section 203 (h) (2) of the 1926 Kevenue Act “ includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.” The Kimberly-Clark Co. was not a corporation “ resulting from a reorganization.” Nor was it either the acquiring corporation or a corporation the shares of which were acquired in the statutory case of “ an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation.” The Kimberly-Clark Co. was not, in our opinion, in the sense of the 1926 Kevenue Act, section 203 (h) (1), a party to any merger or consolidation; nor was it recapitalized and there was no change in its identity, form, or place of organization. The petitioner, in our view, can find no support in any language of the statute to sustain his contention that the Kimberly-Clark Co. was “ a party to the reorganization ” within the meaning of section *702 203 (c), supra. If such determination is correct, it necessarily follows that the declaration of a dividend of Kotex Co. stock on January 3, 1927, by the Kimberly-Clark Co. was not made by a corporation a party to a reorganization and the petitioner as a stockholder therein was not a shareholder in a corporation a party to a reorganization.
The insistence in behalf of the petitioner is that the Kotex Co. stock in the hands of the Kimberly-Clark Co. was impressed with a specific enforceable trust at the date of the dividend resolution of January 3, 1927, the Kimberly-Clark Co. prior to that date having become a party to the deposit agreement of November 1, 1926, which was signed by the Kimberly-Clark Co., Kotex Co., and all the stockholders of both companies. For petitioner it is argued that by the terms of the deposit agreement the Kotex Co. stock “ could be used only for the purpose ” of the exchange for stock of the International Cellucotton Products Co.
Suppose any or all of the individuals who owned the minority shares of the Kotex Co. had assigned or transferred their respective shares subsequent to having signed the deposit agreement, would such assignments or transfers be void or ineffective to pass their interests in and title to such shares, because their assignees or transferees would be obligated to make the exchange of stock as contemplated in the deposit agreement? We think not. And if not, is the transfer or assignment of Kotex Co. stock made by the Kimberly-Clark Co. on January 3, 1927, as set forth in resolution passed by its board of directors on that date, void or ineffective? We do not think so. The resolution of January 3, 1927, declared a dividend in stock of the Kotex Co. “ and that said dividend be paid by distributing ” to its holders of common stock “ shares of said stock of the Kotex Company, pro rata, in proportion to the stockholdings of the Kimberly-Clark Company as of the date hereof or by delivering said shares to the Deposit Committee to the extent that said stockholders have signed the Deposit Agreement dated November 1, 1926 or the Reorganization Agreement, dated December 1, 1926. * * * ”
On January 3, 1927, the Kimberly-Clark Co. endorsed, in blank, certificates representing 44,749 shares of Kotex Co. stock and delivered them to the Kotex Co., which issued new certificates in the names of the Kimberly-Clark Co. stockholders, pro rata, which certificates were not delivered in person to the individual stockholders entitled thereto and the owners thereof subject to terms of the deposit agreement, but, in accordance with their consent and agreements previously expressed, to the deposit committee, thereby completing the deposit with the committee of the entire outstanding stock of the Kotex Co.
*703 The deposit agreement, in part, provided:
* * * and in tie event of a declaration of stock dividend or dividends upon any shares so deposited, or in the event of the declaration by the Paper Company [Kimberly-Clark Co.] of a dividend payable in the stock of the Old Corporation [Kotes Co.] the shares represented by such dividend or dividends should be, in the ease of each depositor, bound by the terms of this agreement, and the provisions thereof * * *.
After the Kimberly-Clark Co. on January 3, 1927, endorsed in blank the Kotes Co. certificates as aforesaid and the Kotex Co. issued new certificates in the names of ■ the Kimberly-Clark Co. stockholders, pro rata, in keeping with the resolution of its board of directors declaring a dividend payable in Kotex Co. stock, the stockholders of Kimberly-Clark Co. in whose names the Kotex Co. stock was issued, in our opinion and we so hold, acquired legal title to those shares as a dividend distribution, notwithstanding the limitations or restrictions by which they were bound by reason of prior agreements made with respect to the disposition to be made of the stock.
In the matter of restrictions, in Rodrigues v. Edwards, 40 Fed. (2d) 408, affirming 33 Fed. (2d) 1003, the court said:
Plaintiff concedes that the receipt of something of exchangeable value or of which he could dispose would constitute income. See Eisner v. Macomber, 252 U. S. 189, 207, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. E. 1570. He asserts, however, that under the contract he could make no disposition of the stock without the consent of the company or Meyer; furthermore, that it was subject to purchase at some future book value.
In our judgment, the contract not only did not prevent plaintiff from disposing of the trust certificates, but, on the contrary, it evidenced a clear intention that he should have a right of immediate disposition thereof. The trust certificates were to bear on their face the statement that they should not be assignable except in accordance with the terms of the agreement; this clearly implied that, subject to those terms, they might be assigned. Cf. Uniform Stock Transfer Act, ¶ 15 (P. L. N. J. 1916, p. 402) ; Baumohl v. Goldstein, 95 N. J. Eg. 597, 124 A. 118. Clearly, therefore, they were not wholly inalienable, even though a prospective purchaser were to acguire them subject to the limitations under which they were held by plaintiff. The requirement of consent by a third person is not an absolute bar to negotiation (Farmers’ Mercantile & Supply Co. v. Lawn, 146 Wis. 252, 131 N. W. 366; In re Copal Varnish Co., [1917] 2 Ch. 349) ; on the contrary, it implies that, if such consent be secured, the stock or trust certificate is assignable. Some restrictions upon the transferability of corporate shares or trust certificates are now common; but such shares or certificates may nevertheless be readily marketed. See “ Kestrictions Upon the Transferability of Shares of Stock,” 42 Harv. Law Eev. 555, and cases cited.'
In behalf of the petitioner it is insisted that the case of Sidney F. Tyler et al., Trustees, 28 B. T. A. 367, affirmed by the Circuit Court of Appeals for the Third Circuit, 72 Fed. (2d) 950, is “ a square authority against all aspects of respondent’s contention that Earn- *704 berly-Clark stockholders are taxable upon a dividend in Kotex Company stock.”
In the Tyler case, supra, in which case petitioners kept their book? and filed income tax returns on the cash receipts and disbursements basis, the Commissioner determined that the profit realized from the sale of certain shares of stock was received by and taxable to petitioners in 1927 — the petitioners con .ending that such profits were not received by them until the year 1928. We held that the profit was not realized until 1928 and hence there was no deficiency in 1927. In disposing of the case on appeal, the Circuit Court of Appeals, in part, said:
Whether the profit was realized in 1927 or 1928 is dependent upon whether the Safe Deposit and Trust Company of G-reensburg was the agent for the respondents, since they concede that, if the Trust Company was their agent, receipt of the purchase price by it in 1927 was equivalent to receipt by them.
:H ‡ ‡ * *
The doctrine of constructive receipt is applicable only when there is no substantial limitation or restriction as to the time of payment to the taxpayer. The deposit agreement, however, does limit and restrict the time of payment since it specifically provides that the depositing shareholders are not to receive any money until after January 1, 1928. They could neither demand their share nor control its disposition prior to that date. Under the agreement, the respondents, could not and did not in fact or constructively receive the money for their shares until 1928. We are of the opinion therefore that the Board of Tax Appeals did not err in holding that the income was earned in 1928 and that the profit therefrom was taxable in that year.
In the instant case, the deposit agreement — when signed by stockholders o.f the Kimberly-Clark Co. — made the deposit committee, in our opinion and we so hold, the agent, with very broad powers it is true, of each stockholder, and in the event of a declaration by the Kimberly-Clark Co. of a dividend payable in Kotex Co. stock, the shares represented by guch dividend were to be bound by the terms of the deposit agreement and issued to the committee or any member it might designate for endorsement and deposit thereunder. There was no prohibition against the declaration of a dividend in Kotex Co. stock and the reference to same in the deposit agreement as therein set forth was a clear indication that there might be such a dividend and, if go, how the stockholders of the Kimberly-Clark Co. had agreed it might be handled. Such a dividend was declared by the resolution of January 3, 1927, and Kotex Co. stock was thereafter issued in the names and for the number of shares to which each stockholder in the Kimberly-Clark Co. was entitled, such shares being dealt with by the deposit committee as authorized by the stockholder when he signed the deposit agreement of November 1, 1926, and thereby constituted the deposit committee his agent in the matter of receiving and otherwise dealing with the Kotex Co. stock dividend.
*705 The deficiency notice sets forth that the petitioner in 1927 received 419.866 shares of Kotex Co. stock as a dividend distribution from the Kimberly-Clark Co., and such, the record shows, was the correct number to which he was entitled if Kotex Co. stock was in fact distributed as a dividend on January 3, 1927. The petitioner was called as a witness at the hearing. He did not deny or affirm the receipt of the alleged distribution of Kotex Co. stock and was excused without giving any testimony at variance with the respondent’s determination.
In whatever light the declaration of a dividend by the Kimberly-Clark Co. payable in Kotex Co. stock is viewed, the petitioner got the benefit thereof.
The parties agree, and we concur, that the exchange of Kotex Co. stock for International Cellucotton Products Co. stock was a nontaxable transaction. (Sec. 203 (b) (4), Revenue Act of 1926.) It is not necessary to decide whether the transaction resulted in a reorganization of the Kotex Co. (See Alfred R. L. Dohme, 31 B. T. A. 671.)
Upon the whole record and careful consideration of the authorities cited, though we have not fully discussed them, we are of the opinion and hold that the respondent did not commit error in his determination that in 1927 petitioner received 419.866 shares of Kotex Co. stock as a dividend distribution from the Kimberly-Clark Co.; that the value of that stock at the time of distribution was $138.81 per share; and that the same was not reported on petitioner’s 1927 income tax return. Respondent’s determination of deficiency in the amount of $8,323.17 with respect thereto is therefore approved. The respondent having duly made claim for an increased deficiency and it appearing from stipulation of counsel for the respective parties that the petitioner in July 1927 sold 336 shares of the preferred stock of the International Cellucotton Products Co. at the price of $100 per share, which was not reported on his income tax return for 1927, and that said shares were received or acquired in the manner and on the basis set forth in our findings of fact, we are of the opinion and hold that the sale of said stock was a taxable transaction, and, counsel of the respective parties having so stipulated, provided the Board approves, the gain or loss arising therefrom will be computed under Rule 50.
Reviewed by the Board.

Judgment will he entered u/nder Bule 60.

Smith concurs in the result.
Goodeioh dissents.